870 A.2d 186

**Charles J. KUSHELL, IV**

**v.**

**DEPARTMENT OF NATURAL RESOURCES.**

**No. 96, Sept. Term, 2004.**

Court of Appeals of Maryland.

March 14, 2005.

564

J. Dirk Schwenk (Lochner and Schwenk, LLC, Annapolis, on brief), for appellant.

Saundra K. Canedo, Asst. Atty. Gen. (J. Joseph Curran, Jr., Marianne D. Mason, Asst. Atty. Gen., on brief), for appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

RAKER, J.

In this case we consider whether Maryland tax liability under § 8–716(c)(1)(iv) of the State Boat Act for "[t]he possession within the State of a vessel purchased outside the State to be used principally in the State" requires that the out-of-state purchase have been made with an intent to use the vessel principally in Maryland. We find that the plain language of the statute requires this result. Both parties to this appeal agree that appellant Charles Kushell did not intend, at the time of purchase, to principally use his vessel in Maryland. We shall reverse the Circuit Court's order upholding a tax assessment against Kushell.

I.

The following findings of fact from the Administrative Law Judge's ("ALJ's") proposed decision are not disputed by either party:

"1. The *Genesis* is a 58–foot Spindrift Motoryacht. The vessel is documented by the U.S. Coast Guard, and bears USCG Document Number 684088.

2. Mr. Kushell purchased the *Genesis* in 1989 for use as [a] residence in California at a time when he was employed and living in California. The *Genesis* remained in California between purchase and 1996.

3. The vessel was purchased outside of Maryland.

4. At the time that it was purchased, the vessel was not intended to be used principally in Maryland.

5. Mr. Kushell paid personal property taxes on the vessel to the State of California between 1989 and 1999.

6. In 1996, the vessel was moved from the Pacific Ocean to the Atlantic Ocean, and after 1996 was used during most of the year in Florida and Man O' War Cay, Abacos, Bahamas.

7. The vessel was in Maryland for the first time for approximately a month during the fall of 1996.

8. The vessel returned to Maryland for the summer months of 1997, and for successive years thereafter.

9. Mr. Kushell registered an inflatable dinghy with a small outboard motor in Maryland in 1997.

10. The inflatable dinghy was kept during 1997 on a rack at Mears Marina in Annapolis, Maryland.

11. The *Genesis* was never used for a greater percentage of time in Maryland during any calendar year than it was used outside of Maryland.

12. During calendar year 2001, the vessel was in use in Maryland waters for a period of 171 days. The vessel was in Maryland from May 21, 2001 until November 7, 2001.

13. During calendar year 2001, the vessel was in use out of the State of Maryland and out of the United States and its territories, for a period of 189 days. The vessel was in Man of War [Cay], Abacos, Bahamas from January 1, 2001, to May 16, 2001 and November 12, 2001 to December 31, 2001.

14. During the year 2001, the vessel was not used in any other state of the United States more than it was used in Maryland.

15. Mr. Kushell believed that so long as he kept his boat in Maryland less than six months per year, his boat would not be "in principal use" in Maryland for purposes of the State Boat Act use tax.[1]

---

1. Maryland's boat excise tax is imposed under § 8–716(c) of the State Boat Act, Md.Code (1973, 2000 Repl.Vol., 2001 Cum.Supp.), §§ 8–701 *et seq.* of the Natural Resources Article. (Unless indicated otherwise,

16. Mr. Kushell was told by a representative of the Department of Natural Resources ("DNR") that he was not required to pay the tax so long as the vessel was federally documented and was used in Maryland for less than six months of any given year.

17. The application of the definition of "State of Principal Use," as employed by the DNR Boat Tax Enforcement Unit, has never been for a period of time of 6 months more or less. Instead, the application of "State of Principal Use" has always been for the period of time where the boat is most used in a state in a calendar year.

18. Mr. Kushell examined the DNR website, and found it confirmed his understanding that he did not owe tax so long as he had the boat out of Maryland the majority of the year.

19. At all times relevant, including the present, the DNR web site contains the following text: "What is meant by

---

all subsequent statutory citations in this opinion will be to Md.Code (1973, 2000 Repl.Vol., 2001 Cum.Supp.), Natural Resources Article.) Section 8–716(c) provides, in pertinent part:

"(1) Except as provided in § 8–715(d) of this subtitle and in subsections (e) and (f) of this section, and in addition to the fees prescribed in subsection (b) of this section, an excise tax is levied at the rate of 5% of the fair market value of the vessel on:

(i) The issuance of every original certificate of title required for a vessel under this subtitle;

(ii) The issuance of every subsequent certificate of title for the sale, resale, or transfer of the vessel;

(iii) The sale within the State of every other vessel; and

(iv) *The possession within the State of a vessel purchased outside the State to be used principally in the State.*"

(Emphasis added.) Of the exemptions listed, the only one potentially relevant to Kushell is found at § 8–716(e)(7):

"A person is not required to pay the tax provided for in subsection (c) of this section resulting from: ... [t]he possession of a vessel that was purchased or acquired prior to coming into the State by a nonresident of the State and is not used principally on the waters of the State and if the issuance of a title is not sought."

Section 8–716(a)(3) provides, in pertinent part, " 'Used principally in this State' means that this State is the state of principal use as defined in § 8–701(*o*) of this subtitle...."

Section 8–701(*o*) provides: " 'State of principal use' means the state on whose waters a vessel is used or to be used most during a calendar year."

'used principally in Maryland?' A vessel is considered used principally in Maryland if it is in Maryland the greatest percentage of time in a given calendar year."

20. The definitions used for internal training by the Department of Natural Resources Division of Licensing define State of Principal Use as "the state or jurisdiction in which a vessel is used the greatest percentage of time in a calendar year."

21. In DNR internal training, the definition of State of Principal Use is merely a starting point in the training of personnel.

22. Mr. Kushell relied on the DNR representative's statement, and the statement on the website, in deciding to keep his boat in Maryland for 171 days in calendar year 2001.

23. Had Mr. Kushell known that he could be responsible for the tax if the boat was only used in Maryland, and no other state of the United States, he would have registered the boat in Florida and kept it in that state for part of the year.

24. At the end of the calendar year 2001, Mr. Kushell was assessed excise tax, penalties and interest in the total amount of $14,304.54. He paid this amount in full on October 3, 2002, while reserving his right to challenge whether the tax was due."

Kushell appealed the tax assessment to the Office of Administrative Hearings ("OAH"), and OAH held a hearing pursuant to § 8–716.2(e). The ALJ ruled that Kushell was liable for the tax, rejecting Kushell's contention that imposition of tax under § 8–716(c)(1)(iv) required that an owner have purchased his vessel with the intent to use it principally in Maryland. He also rejected Kushell's contention that DNR should be equitably estopped, based on the statements of its website and personnel, from collecting the tax. He rejected Kushell's contention that a vessel must spend six months in Maryland in order to be "used principally" in this State. The ALJ further rejected Kushell's arguments that § 8–716(c)(1)(iv) was uncon-

stitutional, either for vagueness or as a duty on tonnage proscribed by U.S. Const. art. I, § 10, cl. 3.

The Secretary of Natural Resources adopted the entire proposed decision of the ALJ. Kushell filed in the Circuit Court for Anne Arundel County a petition for judicial review. The Circuit Court affirmed the agency decision, holding that the ALJ had construed § 8–716(c)(1)(iv) correctly in finding no requirement of intent. The court held that the ALJ had ruled correctly with respect to estoppel, and further found that the explanation of "used principally" on DNR's website was not misleading. The Circuit Court also agreed with the ALJ's analysis of Kushell's Constitutional arguments.

Kushell noted a timely appeal to the Court of Special Appeals. We issued a Writ of Certiorari on our own initiative before consideration by that court. *Kushell v. DNR*, 383 Md. 569, 861 A.2d 60 (2004).

## II.

Before this Court, Kushell argues that the State Boat Act imposes tax only on the possession of a vessel which, at the time of sale, was purchased with the specific intent of using it principally in Maryland. He argues that the plain language of § 8–716(c)(1)(iv) unambiguously requires this result. Kushell suggests that DNR's reading renders the words "to be" nugatory, because the meaning would not change if "to be" were deleted and the statute simply read "possession within the State of a vessel purchased outside the state[,] used principally in the State." DNR's reading also renders the words "possession within the State" superfluous, according to Kushell, because any vessel used principally in Maryland is by definition possessed here.

Kushell points to cases in which we construed the language "purchased ... tangible personal property for use, storage or [other] consumption in this State," contained in Md.Code (1951), Art. 81 §§ 368(c) and 369, to require, as a precondition for assessment, that a purchaser have intended at the time of purchase to use, store, or consume the property in Maryland.

*See Comp. of Treas. v. Thompson Trailer Corp.*, 209 Md. 490, 495–96, 121 A.2d 850, 853 (1956); *Comptroller v. James Julian, Inc.*, 215 Md. 406, 412, 137 A.2d 674, 679 (1958).

Kushell notes that Art. 81 § 368(c) was amended in 1955 to replace the phrase "for use, storage or other consumption" with "used, stored or consumed," and that Art. 81 § 369 was simultaneously amended to delete altogether the phrase "for use, storage or consumption." *See* 1955 Md. Laws, Ch. 332 at 507–08. We subsequently held that these amendments made liability "depend on actual use, storage or consumption in Maryland, rather than on purchase with intent to use, store or consume in the State." *Lane Const. Corp. v. Comptroller*, 228 Md. 90, 92, 178 A.2d 904, 905 (1962). Kushell contends that the current language of § 8–716(c)(1)(iv) is more akin to that of Md.Code (1951), Art. 81 §§ 368(c) and 369 than it is to the post–1955 versions of those statutes. He suggests that this similarity evinces an intent on the part of the General Assembly to include the same intent requirement in the present-day boat tax as was contained in the pre–1955 general use tax.

Turning to legislative history, Kushell contends that an earlier proposed version of the provision that ultimately became § 8–716(c)(1)(iv) would unambiguously have imposed the tax without regard to intent at the time of purchase. The rejection of this bill in favor of the enacted legislation, Kushell argues, demonstrates a legislative purpose to condition tax liability on the purchaser's contemporaneous intent to use a vessel in Maryland. *See* House Bill 1575 (1985) (providing, in pertinent part, "the owner of any vessel that has a valid document issued by the United States Coast Guard and that *is used* principally on the waters of the State for pleasure shall pay a 5 percent excise tax on the gross sales price . . . .") (emphasis added).

Kushell also notes a comparison between § 8–716(c)(1)(iv) and § 8–712.1(a)(1) of the Natural Resources Article. The latter statute provides: "An owner of a vessel that has a valid document issued by the United States Coast Guard and that *is used* principally on the waters of the State for pleasure shall

apply to the Department for a Maryland use sticker." (Emphasis added.) Kushell suggests that the variation is meaningful; that the present statutory scheme requires all federally documented vessels principally used in Maryland to display a use sticker, but imposes excise tax only on those purchased with the specific intent to make Maryland the state of principal use.

Kushell also draws our attention to the Connecticut case of *Magic II, Inc. v. Dubno,* 206 Conn. 253, 537 A.2d 998 (1988). In that case, the Connecticut Supreme Court examined the following language:

> "An excise tax is hereby imposed on the storage, acceptance, consumption or any other use in this state of tangible personal property purchased from any retailer for storage, acceptance, consumption or any other use in this state . . . ."

Conn. Gen.Stat. § 12–411 (1985). The Court upheld the Deputy Commissioner of Revenue's interpretation that the statute required, as a condition precedent to liability, that "the purchase must have been made *for the purpose of* storage, use, or other consumption in this state." *Magic II, Inc.,* 537 A.2d at 999 (emphasis added). Kushell argues that the same interpretation would be appropriate in the instant case.

Kushell also raises an estoppel argument. Assuming *arguendo* that he is incorrect about the meaning of § 8–716(c)(1)(iv), Kushell argues that DNR should be estopped from assessing this tax because of Kushell's reliance on potentially misleading statements on the DNR website concerning the definition of "principal use," and because of his reliance on an incorrect oral explanation of that term by a DNR clerk.[2] Finally, he argues that the statute should be stuck down as

---

**2.** Kushell no longer disputes that a vessel used in the State of Maryland for less than six months in a calendar year nonetheless can be "principally used" in Maryland if it spends the remaining months outside the United States. He has also abandoned his contention that § 8–716(c)(1)(iv) imposes an unconstitutional duty on tonnage. Accordingly, we will not address these issues.

unconstitutionally vague, as applied either to Kushell or to others similarly situated.

DNR argues that its interpretation of § 8–716(c)(1)(iv) is entitled to judicial deference. It further contends that the statute unambiguously subjects Kushell to the tax; that it is Kushell who is attempting to interpolate language by imposing an intent requirement not supported by the statutory text. DNR also suggests that Kushell's reading would render other provisions of § 8–716 superfluous. Specifically, it points to the system of tax abatement and exemption set out in § 8–716(f) [3] for vessels on which excise tax has already been paid to a jurisdiction with reciprocal provisions. According to DNR, this system would be superfluous if liability were dependent on original intent, because there would be no tax liability

---

3. Section 8–716(f) provides:

"(1) This subsection applies to possession within the State of a vessel if:

(i) The vessel was formerly:

1. Titled or numbered in another jurisdiction; or

2. Federally documented and principally used in another jurisdiction;

(ii) The present owner has paid a sales or excise tax on the vessel to the other jurisdiction; and

(iii) The jurisdiction to which the tax was paid would allow an exemption or credit under its sales or excise tax for excise tax on a vessel formerly paid to the State.

(2) For a vessel described in paragraph (1) of this subsection:

(i) If the rate of the tax paid to the other jurisdiction is not less than the rate under subsection (c) of this section, the tax imposed under subsection (c) of this section does not apply to possession of the vessel within the State;

(ii) If the rate of the tax paid to the other jurisdiction is less than the rate under subsection (c) of this section, the rate of the tax imposed under subsection (c) of this section on possession of the vessel within the State is the difference between the tax rate paid to the other jurisdiction and the rate under subsection (c) of this section; and

(iii) The Department may require the taxpayer to submit satisfactory proof of the payment of a tax to another jurisdiction and the rate of tax paid and, where applicable, evidence of principal use of a federally documented vessel in another jurisdiction.

(3) This subsection is applicable to any vessel incurring a liability for Maryland boat excise tax on or after July 1, 1986."

for owners such as Kushell, and thus no need for a system of abatement.

DNR argues that our interpretation of Maryland's post–1955 general use tax in *Lane* furnishes persuasive authority for construing the current boat tax law. It suggests that under *Lane*, liability under a use tax is dependent on use or possession at the time of putative liability, not on subjective intent at the time of purchase.

DNR criticizes Kushell's reliance on the defeated House Bill 1575 as evidence that the Legislature specifically considered and rejected a non-intent-based use tax on federally-documented vessels brought into Maryland. It argues that the provision at issue merely was a proposal to reassign collection of Maryland's general personal property use tax, as applied to pleasure boats, from the Comptroller to the Department of Natural Resources.

DNR points to the legislative history of § 8–716, highlighting language which was part of House Bill 1849 (1986), but was deleted from the statute as enacted. *See* 1986 Md. Laws, Ch. 828 at 3177–78. That language would have provided: "Notwithstanding the provisions of this subsection, no tax is paid on ... (ii.) A documented vessel that is purchased or acquired prior to coming into this State by a nonresident of this State and: 1. Remains in this State for not more than 180 days...." DNR argues that the rejection of this language evinces a legislative intent contrary to Kushell's position.

With respect to Kushell's estoppel argument, DNR contends that the government may not be estopped from performing the quintessentially governmental function of collecting a tax. *See Salisbury Beauty Schools v. St. Bd.*, 268 Md. 32, 63–65, 300 A.2d 367, 385–86 (1973). It acknowledges that agencies may be bound to follow their own rules and regulations, *see U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Pollock v. Patuxent*, 374 Md. 463, 467, 823 A.2d 626, 628 (2003), but denies that DNR rules or regulations ever have held "principal use" to require greater than six months' use during a calendar year. It also argues

that § 8–716(c)(1)(iv) is sufficiently clear to render it not unconstitutionally vague.

## III.

This case requires us to review a conclusion of law, contained within a contested case decision by the Department of Natural Resources. Review of such a decision is governed by the Administrative Procedure Act, Md.Code (1984, 2004 Repl. Vol.), §§ 10–101 *et seq.* of the State Government Article. Section § 10–222(h) of the State Government Article provides as follows:

"In a proceeding under this section, the court may:

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious."

■ Many Maryland cases have set out the standard for judicial review of administrative agency decisions. We have often stated that a court ordinarily will review the actions of an administrative agency only to determine if its conclusions are arbitrary, capricious, or contrary to law. In reviewing factual determinations, or mixed questions of law and fact, we apply the "substantial evidence" standard set forth in § 10–222(h)(3)(v) of the State Government Article, reversing the agency's findings only if we hold that "a reasoning mind" could not have reached them on the record before the agency.

*Charles County v. Vann,* 382 Md. 286, 295, 855 A.2d 313, 318 (2004); *Board of Physician v. Banks,* 354 Md. 59, 67–68, 729 A.2d 376, 380–81 (1999). *See Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 512–13, 390 A.2d 1119, 1123–24 (1978).

In reviewing an agency's legal conclusions, on the other hand, we determine under § 10–222(h)(3)(iv) of the State Government Article whether the conclusions are "affected by any other error of law." Accordingly, we review *de novo. Spencer v. State Board of Pharmacy,* 380 Md. 515, 528, 846 A.2d 341, 348–49 (2004). While we frequently give weight to an agency's experience in interpretation of a statute that it administers, it is always within our prerogative to determine whether an agency's conclusions of law are correct. *Christopher v. Montgomery County Dept. of Health & Human Services,* 381 Md. 188, 198, 849 A.2d 46, 52 (2004); *Baltimore Lutheran High School Assn., Inc. v. Employment Security Admin.,* 302 Md. 649, 662, 490 A.2d 701, 708 (1985).

In reviewing the decision of an administrative agency, we evaluate the decision of the agency under the same statutory standards as would the circuit court. *Spencer,* 380 Md. at 523–24, 846 A.2d at 346 (2004).

The legal issue in this case is one of statutory interpretation. The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. *See Collins v. State,* 383 Md. 684, 688, 861 A.2d 727, 730 (2004). Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology. *Deville v. State,* 383 Md. 217, 223, 858 A.2d 484, 487 (2004).

In construing the plain language, "[a] court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle

interpretations that limit or extend its application." *Price v. State,* 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003); *County Council v. Dutcher,* 365 Md. 399, 416–417, 780 A.2d 1137, 1147 (2001). Statutory text " 'should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory.' " *Collins,* 383 Md. at 691, 861 A.2d at 732 (quoting *James v. Butler,* 378 Md. 683, 696, 838 A.2d 1180, 1187 (2003)). The plain language of a provision is not interpreted in isolation. Rather, we analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect. *Deville,* 383 Md. at 223, 858 A.2d at 487; *Navarro–Monzo v. Washington Adventist,* 380 Md. 195, 204, 844 A.2d 406, 411 (2004).

■■■■■■ If statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written. *Collins,* 383 Md. at 688–89, 861 A.2d at 730. "If there is no ambiguity in that language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends; we do not need to resort to the various, and sometimes inconsistent, external rules of construction, for 'the Legislature is presumed to have meant what it said and said what it meant.' " *Arundel Corp. v. Marie,* 383 Md. 489, 502, 860 A.2d 886, 894 (2004) (quoting *Witte v. Azarian,* 369 Md. 518, 525, 801 A.2d 160, 165 (2002)).

■■■■ According to Kushell, the tax *sub judice* applies only to the act of possessing, within Maryland, a vessel which was (a) purchased outside the State, and (b) purchased with the intent to principally use it in Maryland. According to DNR, the tax applies to the act of possessing, within Maryland, a vessel which (a) was purchased outside the State, and (b) is now used, or is going to be used, principally here.

Under ordinary rules of English grammar, we find that the plain text supports Kushell's reading. The language of the statute reads as follows:

"The possession within the State of a vessel purchased outside the State to be used principally in the State."

It does not read:

"The possession within the State of a vessel to be used principally in the State, purchased outside the State."

Nor does it read:

"The possession within the State of a vessel purchased outside the State, used principally in the State."

Nor does it read:

"The possession within the State of a vessel, purchased outside the State, to be used principally in the State."

We think these hypothetical alterations will permit the reader intuitively to grasp the meaning of the original. Formal grammatical analysis yields the same results. The issue is one of antecedents. In the original text, "to be used principally in the State" is an infinitive phrase. Infinitive phrases may function as nouns, adverbs, or adjectives. It is clear from the context that this phrase is not functioning as a noun, so it must be employed as a modifier. Modifiers always refer to some antecedent; the question is whether "to be used principally in the State" functions as an adjective modifying the noun "vessel," or as an adverb modifying the participial phrase "purchased outside the State."[4] DNR's reading requires that "vessel" be the antecedent; Kushell's reading requires that "purchased outside the State" be the antecedent.

In ordinary usage, modifiers refer to the nearest plausible antecedent. Because "to be used principally in the State" occurs nearer to "purchased outside the State" than to "vessel," ordinary usage dictates that the Legislature intended "purchased outside the State" as the antecedent.[5] Where an infinitive phrase is used as an adverb, speakers of English

---

4. Participles and participial phrases function as adjectives; adjectives may be modified by adverbs.

5. We refer to this as the nearest plausible antecedent because the nearest *possible* antecedent, the noun "State," yields the nonsensical result "State to be used principally in the State."

normally will understand it to convey purpose. This is thus a tax on the possession of vessels, but only those vessels purchased outside the state *for the purpose of* being used principally inside the State.

In order to achieve DNR's reading, we would have to rewrite the statute in one of three ways. First, we could change the word order to make "vessel" the nearest antecedent, *i.e.* "The possession within the State of a vessel to be used principally in the State, purchased outside the State." This language is awkward, and in any event not what the General Assembly enacted or apparently intended.

Second, as Kushell suggests DNR's reading requires, we could eliminate the words "to be." This would leave: "The possession within the State of a vessel purchased outside the State, used principally in the State." This alteration would transform "[to be] used principally in the State" into a participial phrase. Since participial phrases may serve only as adjectives and not as adverbs, "used principally in the State" could not modify "purchased outside the State." Instead, it would have to modify "vessel," the nearest plausible noun. Again, this is not the language enacted by the General Assembly.[6]

Finally, we could insert two commas, producing "The possession within the State of a vessel, purchased outside the State, to be used principally in the State." Most readers would interpret "purchased outside the State" and "to be used principally in the State" as two terms in a list of modifiers, both referring to "vessel." Again, this is neither the grammar nor the punctuation chosen by the Legislature.

Without alteration of the statutory language, we find it inescapable that "to be used principally in the State" modifies "purchased outside the State." Since Kushell's reading is supported by the unadulterated text, we will not entertain readings which require us to "add [or] delete language so as to

---

6. An actor playing Hamlet would hardly expect his audience to accept "Or not to be: that is the question" as an inconsequential alteration.

reflect an intent not evidenced in the plain and unambiguous language of the statute," or to "construe the statute with forced or subtle interpretations that limit or extend its application." *Price,* 378 Md. at 387, 835 A.2d at 1226.

DNR argues that Kushell's reading of § 8–716(c)(1)(iv) would render the system of tax abatement codified at § 8–716(f) superfluous. We do not agree. Section 8–716(f) allows a dollar-for-dollar offset of sales or excise taxes paid to other jurisdictions on vessels which have become subject to Maryland's boat tax. It is true that the § 8–716(f) abatement will be unnecessary for owners who, like Kushell, have no boat tax liability under our reading of § 8–716(c)(1)(iv). But this construction hardly makes the abatement superfluous. The section will apply to owners who incur tax liability by re-titling vessels in Maryland, and will apply to owners who purchased federally-documented vessels in other states with the intent to principally use them in Maryland.

Comparing § 8–716(c)(1)(iv) to Maryland's general sales and use tax, set out at Md.Code (1988, 2004 Repl.Vol.), §§ 11–101 *et seq.* of the Tax—General Article, is also instructive. Section 11–102(a) of the Tax—General Article provides:

"*Sales and use tax imposed.*—Except as otherwise provided in this title, a tax is imposed on:

(1) a retail sale in the State; and

(2) a use, in the State, of tangible personal property or a taxable service."

We find the variation between "a use, in the State, of tangible personal property," on the one hand, and "the possession within the State of a vessel purchased outside the State to be used principally in the State," on the other, to be meaningful. The Legislature has demonstrated that, where it seeks to tax the use of personal property without qualification as to intent at the time of purchase, it knows how to do so in straightforward language. If the Legislature had intended § 8–716(c)(1)(iv) of the Natural Resources Article to convey the same meaning as § 11–102(a) of the Tax—General Article,

it could have written "the principal use, in the State, of a vessel purchased outside the State." It did not.

Because we find that the plain text of § 8–716(c)(1)(iv) supports Kushell's reading both grammatically and in relationship to other statutory provisions, we will not delve into the parties' contentions regarding statutory history, legislative history, or authority from outside this jurisdiction. Neither do we reach the questions of whether DNR may be estopped from collecting the tax under the circumstances of this case, or whether § 8–716(c)(1)(iv) is unconstitutionally vague.

The parties agree that at the time Kushell purchased the *Genesis* he had no intention of principally using it in Maryland. Accordingly, he has no tax liability under § 8–716(c)(1)(iv) of the Natural Resources Article.

*JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE ORDER OF THE SECRETARY OF THE DEPARTMENT OF NATURAL RESOURCES. COSTS TO BE PAID BY APPELLEE.*