28 A.3d 138

**INSURANCE COMMISSIONER FOR the STATE of Maryland, ex rel., REVEREND D.C. WASHINGTON**

v.

**STATE FARM FIRE & CASUALTY COMPANY.**

No. 0041, Sept. Term, 2010.

Court of Special Appeals of Maryland.

Sept. 6, 2011.

**598**

J. Van Lear Dorsey (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for Appellant.

Louise McB. Warmath (Leonard C. Redmond, III, on the brief), Baltimore, MD, for Appellant.

Panel: DEBORAH S. EYLER, HOTTEN, JAMES P.
SALMON, (Retired, Specially Assigned), JJ.

HOTTEN, J.

This appeal arises from a consumer complaint filed by
Reverend D.C. Washington with the Maryland Insurance Administration
("MIA"). MIA determined that appellee, State
Farm Fire and Casualty Company, failed to notify Washington
of an increase in his premium, and, therefore, violated the
insurance laws of Maryland. Following a hearing, an Administrative
Law Judge ("ALJ") reversed MIA's determination.
MIA filed a petition for judicial review in the Circuit Court for
Baltimore City. The circuit court affirmed the ALJ's decision.
On appeal, the Insurance Commissioner for Maryland, appellant,
presents the following questions for our review, which we
quote:

1. Whether State Farm was required to comply with the
   procedural requirements of § 12–106 of the Maryland
   Insurance Article when State Farm attempted unilaterally
   to increase Washington's premium, during the coverage
   term, after "discovering" during the underwriting
   period that the insured had been in several accidents
   despite the fact that he had fully disclosed these accidents
   on his insurance application?

2. Whether State Farm violated § 27–614 of the Insurance
   Article when it unilaterally increased Washington's premium
   without providing him with the statutorily required
   45–days written notice?

For the reasons outlined below, we shall affirm the decision
of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 6, 2007, Washington met with a State Farm
Mutual Automobile Insurance Company agent to obtain automobile
and renter's insurance. The application for automobile
insurance listed a 2005 Hyundai Elantra and provided Washington's
vehicular accident history. The agent reviewed the

application and determined, based on Washington's accident history, that he was ineligible for coverage through State Farm Mutual Automobile Insurance Company. However, Washington was eligible for coverage through a subsidiary, State Farm Fire and Casualty Company. The agent quoted Washington a premium rate of $1,401.46 for a six month policy. Washington accepted the quote and tendered an initial payment of $233.57. The agent then issued an insurance binder that stated, "[t]he Premium shown ... must be in compliance with the Company's rules and rates and is subject to revision." Both parties understood that an insurance policy would be issued at a later date.

The agent submitted Washington's application to the company's underwriting department. A comprehensive loss underwriting exchange ("CLUE") report was generated and verified Washington's disclosure of two accidents. After reviewing the CLUE report, it was determined that Washington was "negligent" or "at fault" for those accidents. Although Washington was eligible for coverage,[1] the agent had failed to consider the two accidents, and, thus, quoted an inaccurate premium rate. Appellee's underwriting guidelines provided that a 90% surcharge needed to be added to Washington's base rate. Appellee thereafter issued a six month policy with a premium of $2,512.62 and retroactively charged Washington for the additional premium.

On August 30, 2007, appellee received information that Washington may have been responsible for only one of the accidents. Appellee adjusted Washington's premium because he was subject to a 30% surcharge with only one at-fault accident. In the interim, Washington's renter's insurance was issued, which entitled him to a 10% multi-line discount. After both adjustments, the six month premium was retroactively reduced to $1,603.20, with monthly payments of $267.20.

---

1. Washington was eligible for coverage under State Farm Mutual Automobile Insurance Company automobile underwriting guidelines, which permitted State Farm Fire and Casualty Company to issue a policy to "[h]ouseholds where the combined driving record of all drivers includes two chargeable accidents ... in the past 36 months."

On October 24, 2007, Washington filed a complaint with MIA. In the complaint, Washington alleged that appellee "[r]aised premium without explanation & can't give one. No notice given." On September 19, 2008, following an investigation, MIA concluded that appellee failed to provide written notice of an increase in Washington's premium at least 45 days before its effective date, and, therefore, violated Md.Code (2006 Repl.Vol., 2010 Supplement), § 27–614 of the Insurance Article ("Insur."). In its determination, MIA disallowed the premium increase, and noted that after appellee had verified Washington's accident history, it had the option to cancel his insurance policy.

On October 15, 2008, appellee challenged MIA's determination and requested a hearing. MIA referred the case to the Office of Administrative Hearings ("OAH") to issue "final findings of fact, final conclusions of law, and a final order." MIA also requested that specific attention be directed to Insur. §§ 12–106 and 27–614. On May 1, 2009, MIA filed a motion for summary decision, asserting appellee failed to issue a notice of premium increase to Washington. On May 7, 2009, a hearing was held and the ALJ noted that MIA had not timely filed its motion. In response, MIA requested that its motion be treated as a motion for judgment at the close of appellee's case. During the hearing, appellee argued that it did not violate the insurance code because it could not cancel Washington's insurance once it discovered the rating error. Appellee further explained that Washington was still eligible for coverage, albeit at an increased premium. Appellee next argued that a binder was a separate contract from a policy and ceased to exist when the policy was issued. In that regard, appellee asserted that it was not required to follow the notice procedure of Insur. § 27–614 because the increase in premium was effective upon issuance of the policy.

MIA contended that appellee should have provided Washington notice of the premium increase pursuant to Insur. § 27–614. MIA also argued that appellee should have canceled, and re-issued, Washington's policy with the correct

premium since there was no mechanism set forth in Insur. § 12–106 to increase the premium.

On June 19, 2009, OAH concluded that Washington met appellee's underwriting standards; therefore, upon discovering the error, appellee was obligated to adjust the premium to comply with its established rating plan. OAH also noted that there was no "increase in premium" because Insur. § 27–614 does not treat the terms "binder" and "policy" as synonymous. The decision further noted that the alternatives suggested by MIA were unlawful because, pursuant to Insur. § 27–216, appellee could not have provided notice to Washington and continued to collect incorrect premiums.

On July 21, 2009, MIA filed a petition for judicial review in the Circuit Court for Baltimore City. A hearing was held on February 22, 2010, and MIA argued that Washington should have been notified of the premium increase, or appellee should have canceled and reissued the policy with the correct premium. MIA further argued that the uncodified language of House Bill 760 ("HB 760") demonstrates Insur. § 27–614 is applicable to binders because HB 760 created that section.[2]

Appellee responded that the legislative language applied equally to Insur. §§ 27–613 and 27–614, and that there was no mention in Insur. § 27–614 of binders. Moreover, because Insur. § 27–613 referenced a specific type of binder, appellee argued that the legislative language did not dictate Insur. § 27–614 applied to binders. Appellee then argued that Washington was given notice of a possible change in his premium when he accepted the binder. Appellee explained that Washington accepted the language in that contract indicating the premium was subject to change when he accepted the binder.

At the conclusion of the hearing, the circuit court affirmed OAH's decision. In its decision, because MIA failed to argue there was a violation of Insur. § 12–106, the court limited its

---

2. MIA conceded that appellee did not violate Insur. § 12–106 "because they didn't, in fact, cancel the policy."

ruling to Insur. § 27–614, and found that the terms "binder" and "policy" were not interchangeable. The court noted that there was a "distinction to be considered by this court with respect to those terms[,]" and cited *Flester v. The Ohio Casualty Ins. Co.*, 269 Md. 544, 307 A.2d 663 (1973), which held that a binder is a preliminary contract of insurance that gives temporary protection until the issuance of a formal policy. The court then concluded that there was no violation of Insur. § 27–614 because it applied to policies and not binders. Appellant noted an appeal to this Court.

## STANDARD OF REVIEW

In *Maryland Aviation Admin. v. Noland,* 386 Md. 556, 571–72, 873 A.2d 1145 (2005), Judge Eldridge outlined the proper standard for review of an adjudicatory decision by an administrative agency:

A court's role in reviewing an administrative agency adjudicatory decision is narrow; it "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law."

In applying the substantial evidence test, a reviewing court decides "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. A reviewing court "must review the agency's decision in the light most favorable to it; ... the agency's decision is prima facie correct and presumed valid, and ... it is the agency's province to resolve conflicting evidence" and to draw inferences from that evidence.

Despite some unfortunate language that has crept into a few of our opinions, a court's task on review is *not* to "substitute its judgment for the expertise of those persons who constitute the administrative agency." Even with regard to some legal issues, a degree of deference should

often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. Furthermore, the expertise of the agency in its own field should be respected.

(quoting *Bd. of Physician Quality Assurance v. Banks*, 354 Md. 59, 67–69, 729 A.2d 376 (1999)) (Internal citations and footnotes omitted); *see also Hill v. Motor Vehicle Admin.*, 415 Md. 231, 239, 999 A.2d 1019 (2010); *Maryland Transp. Auth. v. King*, 369 Md. 274, 288, 799 A.2d 1246 (2002); *Gigeous v. E. Corr. Inst.*, 363 Md. 481, 495, 769 A.2d 912 (2001); Md.Code (2009 Repl.Vol.), § 10–222(h) of the State Government Article.

## DISCUSSION

### I.

■ As a preliminary matter, we address appellant's argument that the term "risk" includes the premium rate and, thus, Insur. § 12–106(d) requires cancellation when an underwriting investigation reveals that "the *risk* does not meet the underwriting standards of the insurer." (Emphasis provided in brief). Appellee argues that this issue was not preserved for appeal because appellant is raising a new issue. Moreover, appellee asserts that the issue was not preserved for review because MIA's September 19, 2008 determination failed to render a finding that there was a violation of Insur. § 12–106(d), and MIA acknowledged before the circuit court that it was not alleging a violation of Insur. § 12–106. We agree with appellee and explain.

In its September 19, 2008 determination, MIA found that appellee violated Insur. § 27–614(c). MIA, however, did not find a violation of Insur. § 12–106(d). Instead, MIA noted that pursuant to Insur. § 12–106(d), appellee had *"the option to cancel"* Washington's binder. (Emphasis added). During the February 22, 2010 hearing, MIA also conceded that appellee did not violate Insur. § 12–106(d).[3] In that regard, wheth-

---

3. [The court]: So you're not arguing that there's a violation of 12-106?

er there was a violation of Insur. § 12–106(d) was not preserved for review. *See Robinson v. State,* 410 Md. 91, 106, 976 A.2d 1072 (2009) (even arguments of constitutional dimensions, if not raised at trial, are not preserved for appellate review); *Thomas v. Corso,* 265 Md. 84, 108–09, 288 A.2d 379 (1972) (an argument not raised in the court below is not preserved for appellate review); *see also Kanaras v. State,* 54 Md.App. 568, 460 A.2d 61 (1983), *rev'd on other grounds, State v. Kanaras,* 357 Md. 170, 742 A.2d 508 (1999) (appellant may not present a claim for the first time on appeal); *C.S. Bowen Co. v. Maryland Nat'l Bank,* 36 Md.App. 26, 35, 373 A.2d 30 (1977) (an issue is properly before an appellate court only if it was properly presented to the trial court and decided by it in the first instance).

▇ Nevertheless, we note that an insurer is not required to cancel a binder or policy when an underwriting investigation reveals that the risk does not adhere to the underwriting standards of the insurer. Insur. § 12–106(d) provides that "[a]n insurer **may** cancel a binder or policy during the underwriting period if the risk does not meet the underwriting standards of the insurer." (Emphasis added). The inclusion of the word "may" demonstrates that an insurer has discretion when deciding whether to cancel a binder or policy during the underwriting period. Thus, even though the argument was not preserved for review, we disregard the appellant's argument that cancellation is required when an underwriting inves-

---

[The MIA]: No, we're not arguing that because they didn't, in fact, cancel the policy. What they did was an increase of the premium....
[The court]: Are you arguing that they should have cancelled the policy?
[The MIA]: Yes, Yes.
[The court]: So are you arguing that there was a violation of 12–106?
[The MIA]: No, because what they did was a premium increase, they violated 27–614. What they should have done is cancelled the policy pursuant to [sic]. They didn't cancel the policy, they just increased the premium. So what they should have done was cancel the policy consistent with 12–106 and provide the notice provisions that are statutorily required in that....

tigation reveals that "the *risk* does not meet the underwriting standards of the insurer."

## II.

Appellant next argues that Insur. § 27–614(c)(1) [4] "requires that insurers send their policyholders 45–days notice of any 'increase in *the total premium for a policy*' of private passenger automobile liability insurance." (Emphasis provided in brief). Citing the legislative amendment that added the term "total" to policy premium, appellant explains that the Legislature carefully contemplated the language of Insur. § 27–614(c)(1), and decided to make advanced notice of premium increases mandatory for all increases in "total policy premiums for consumer auto policies." In support, appellant cites Section 3 of HB 760, which eventually became Insur. § 27–614, and states: "this Act applies to *all* private passenger motor vehicle liability binders and policies...." (Emphasis provided in brief). Appellee counters that appellant's interpretation of Insur. § 27–614(c)(1) does not consider the argument that there was no policy in existence, or, moreover, a premium for a policy.

Given the parties' contentions, and OAH's decision, we must determine whether the Legislature intended Insur. § 27–614(c)(1) to apply to binders. In addressing this issue, we adhere to the well-known and oft-recited canons of statutory interpretation. "[O]ur primary goal [when analyzing a statute] is always to 'discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision....'" *People's Ins. Counsel Div. v. Allstate Ins. Co.*, 408 Md. 336, 351, 969 A.2d 971 (2009) (quoting *Barbre v. Pope*, 402 Md. 157, 172, 935 A.2d 699 (2007)); *see also Kushell v.*

---

4. Ins. § 27–614(c)(1) provides:

    Except as provided in paragraph (2) of this subsection, at least 45 days before the effective date of an increase in the total premium for a policy of private passenger motor vehicle liability insurance, the insurer shall send written notice of the premium increase to the insured at the last known address of the insured by certified mail.

*Dep't of Natural Res.,* 385 Md. 563, 576, 870 A.2d 186 (2005); *Collins v. State,* 383 Md. 684, 688, 861 A.2d 727 (2004). In that regard, we "must always be cognizant of the fundamental principle that statutory construction is approached from a 'commonsensical' perspective. Thus, we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense." *Frost v. State,* 336 Md. 125, 137, 647 A.2d 106 (1994) (citations omitted).

"Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Adventist Health Care, Inc. v. Md. Health Care Comm'n,* 392 Md. 103, 124 n. 13, 896 A.2d 320 (2006) (internal quotation marks and citations omitted); *see also Johnson v. Mayor & City Council of Balt. City,* 387 Md. 1, 11, 874 A.2d 439 (2005). "If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions, and our analysis ends." *People's Ins. Counsel,* 408 Md. at 351, 969 A.2d 971 (citations omitted); *see also Price v. State,* 378 Md. 378, 387, 835 A.2d 1221 (2003). However, if ambiguous, we may go beyond plain meaning of the statute and ascertain the purpose of the statute "by examining the Legislature's statement of a statute's purposes, [or] other 'external manifestations' or 'persuasive evidence' indicating the legislative intent."[5] *Motor Vehicle Admin. v. Lytle,* 374 Md. 37, 57, 821 A.2d 62 (2003) (citations omitted).

Insur. § 27–614, in pertinent part, states:

(a) *"Increase in premium," "Premium increase" defined.*—In this section, "increase in premium" and "premium increase" include an increase in total premium for a policy due to:

---

5. "An appellate court may consider evidence such as a bill's title and function paragraphs, amendments that occurred as it passed through the Legislature, and its relationship to earlier and subsequent legislation to ascertain the Legislature's goal in enacting the statute." *Lytle,* 374 Md. at 57, 821 A.2d 62 (citing *Harris v. State,* 331 Md. 137, 146, 626 A.2d 946 (1993)).

(1) a surcharge;

(2) retiering or other reclassification of an insured; or

(3) removal or reduction of a discount.

(b) *Scope.—*

(1) This section applies only to private passenger motor vehicle liability insurance.

(2) This section does not apply to the Maryland Automobile Insurance Fund.

(c) *Notice of proposed increase.—*

(1) Except as provided in paragraph (2) of this subsection, at least 45 days before the effective date of an increase in the total premium for a policy of private passenger motor vehicle liability insurance, the insurer shall send written notice of the premium increase to the insured at the last known address of the insured by certificate of mail.

(2) The notice required by paragraph (1) of this subsection need not be given if the premium increase is part of a general increase in premiums that is filed in accordance with Title 11 of this article and does not result from a reclassification of the insured.

(3) The notice may accompany or be included in the renewal offer or policy.

(4) The notice must be in duplicate and on a form approved by the Commissioner.

(5) The notice must state in clear and specific terms:

(i) the premium for the current policy period;

(ii) the premium for the renewal policy period;

(iii) the basis for the action, including, at a minimum:

1. if the premium increase is due wholly or partly to an accident:

A. the name of the driver;

B. the date of the accident; and

C. if fault is a material factor for the insurer's action, a statement that the driver was at fault;

2. if the premium increase is due wholly or partly to a violation of the Maryland vehicle law or the vehicle laws of another state or territory of the United States:

A. the name of the driver;

B. the date of the violation; and

C. a description of the violation;

3. if the premium increase is due wholly or partly to the claims history of an insured, a description of each claim; and

4. any other information that is the basis for the insurer's action;

The plain language of Insur. § 27–614 makes numerous references to insurance policies, but does not reference its application to insurance binders. We believe the omission of the word "binders" was purposeful. HB 760 created Insur. § 27–605.1, which was redesignated as Insur. § 27–614,[6] and reshaped Insur. § 27–605. Insur. § 27–605.1 was primarily

---

**6.** Section 6 of Chapter 44 of the 2006 Acts provides that the publisher of the Annotated Code has the authority to make non-substantive changes without approval from the Legislature. Section 6, in total, states:

That the publisher of the Annotated Code of Maryland, in consultation with and subject to the approval of the Department of Legislative Services, at the time of publication of a new supplement, new volume, or replacement volume of the Annotated Code, shall make non[-]substantive corrections to codification, style, capitalization, punctuation, grammar, spelling, and any reference rendered obsolete by an Act of the General Assembly, with no further action required by the General Assembly. The publisher shall adequately describe any such correction in an editor's note following the section affected. House Bill 570 ("HB 570") re-designated Insur. § 27–605 as Insur. § 27–613. See Chapter 580 of the 2006 Acts. Insur. § 27–605.1, which was primarily comprised of Insur. § 27–605, was re-designated as Insur. § 27–614. See Chapter 350 of the 2006 Acts. Absent legislative intent providing the contrary, we believe the publisher re-designated Insur. § 27–605.1 as Insur. § 27–614 to maintain the sequence of the original statute. See Insur. § 27–614, Editor's Notes ("Chapter 350 Acts 2006, enacted a new section, designated as [Insur.] § 27–605.1. Chapter 580 redesignated [Insur.] § 27–605 as [Insur.] § 27–613. Neither of the 2006 amendments referred to the other, and the enactment by [Chapter] 350 has been re[ ]designated as [Insur.] § 27–614 to maintain the original sequence.").

comprised of the former Insur. § 27–605, which in relevant part, read as follows:

(a) In this section, "increase in premium" and "premium increase" include an increase in the premium for any coverage on a policy due to:

(1) a surcharge;

(2) retiering or other reclassification of an insured; or

(3) removal or reduction of a discount

Insur. § 27–605(a).

When HB 760 created Insur. § 27–605.1, which was re-designated as Insur. § 27–614, it deleted the phrase "any coverage on" in subsection (a). The deletion of "any coverage on" demonstrates that Insur. § 27–614 is not applicable to binders because the phrase could reasonably be interpreted to refer to insurance binders. HB 760, moreover, does not contain any reference to binders. The former Insur. § 27–605 included references to both policies and binders, but when Insur. § 27–605.1, re-designated as Insur. § 27–614, was created, HB 760 neglected to include binders like the former Insur. § 27–605 did.

Additionally, the re-designation of the former Insur. § 27–605 to Insur. § 27–613 in HB 570 explains the non-codified language of Section 3 of HB 760, which addresses binders and policies. Section 3 states that "this Act applies to all private passenger motor vehicle liability *binders and policies* issued or renewed on or after the effective date of this Act." (Emphasis added). The "Act" referenced in Section 3 was the former Insur. § 27–605, which originally included references to binders and policies, but was re-designated as Insur. § 27–613. The re-designation to Insur. § 27–613 *clearly* demonstrates that the non-codified language is not applicable to Insur. § 27–614.

On a separate note, the content of Insur. § 27–614's notice requirement also precludes it from applying to binders. As part of its consumer protection, Insur. § 27–614 requires an insurer to include a comparison between the premium for the current policy period and the renewal policy period in its premium increase notice. An insured who has only been

issued a binder would not have a current or renewal policy period that could be compared and included in a premium increase notice. Moreover, the distinction between binders and policies in Insur. § 12–106(h), which states that "a binder is no longer valid after the policy as to which it was given is issued[,]" demonstrates that Insur. § 27–614 is not applicable to binders.[7]

In sum, we conclude that OAH's decision was correct because "binders" and "policies" are distinct terms that are not interchangeable. Insur. § 27–614, which only references policies, cannot be interpreted to apply to binders, and as such, is inapplicable to this case.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

**7.** The distinction between "binders" and "policies" was recognized in *Flester v. The Ohio Casualty Ins. Co., supra,* 269 Md. 544, 307 A.2d 663. In *Flester,* the Court of Appeals opined:

"The term 'binder' has a well-known significance in the parlance of insurance contracts, and a binder or a binding slip is merely a written memorandum of the most important terms of a preliminary contract of insurance intended to give temporary protection pending the investigation of the risk of insurer, or *until the issuance of a formal policy . . . ."* (Emphasis in original).

*Id.* at 550, 307 A.2d 663 (quoting 44 C.J.S., Insurance, § 49).