969 A.2d 971

**PEOPLE'S INSURANCE COUNSEL DIVISION, et al.**

v.

**ALLSTATE INSURANCE COMPANY, et al.**

No. 86 Sept.Term, 2008.

Court of Appeals of Maryland.

April 15, 2009.

Joshua N. Auerbach, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland and Cynthia Dietz Spirt, Asst. Atty. Gen., Baltimore), on briefs, for Appellants.

Bryan D. Bolton (Michael P. Cunningham of Funk & Bolton, P.A., Baltimore), on brief, for Appellees.

Argued Before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and IRMA S. RAKER (Retired, specially assigned), JJ.

BATTAGLIA, Judge.

The issue in this case is whether the People's Insurance Counsel Division (hereinafter the "Division") may seek judicial review of an order of the Insurance Commissioner, under Sections 6–301 *et seq.* of the State Government Article, which create and define the powers and duties of the Division,[1] and

---

1. The People's Insurance Counsel Division was created by the Maryland Patients' Access to Quality Health Care Act of 2004, the pertinent provisions of which are found in the State Government Article.

Section 2–215 of the Insurance Article, which governs judicial review actions from final decisions of the Insurance Commissioner.[2]

Specifically, in 2006, Allstate Insurance Company, Respondent, advised the Insurance Commissioner that it had planned to cease writing new homeowners and mobile-home insurance policies in certain "catastrophe-prone" areas.[3] The Maryland Insurance Administration reviewed Allstate's filing, and on May 31, 2007, issued its position by e-mail, stating that "the Administration has concluded that the [non-write zone] designation has an objective basis and is neither arbitrary nor unreasonable." The next day, the Division requested a hear-

---

All references to the State Government Article throughout are to Title 6, Maryland Code (1984, 2004 Repl. Vol., 2006 Supp.), unless otherwise indicated.

**2.** The provisions governing "Judicial Review" are contained in Section 2–215 of the Insurance Article, Maryland Code (1995, 2003 Repl. Vol.), and state, in pertinent part:

(a) *Authorized appeals.*—An appeal under this subtitle may be taken only from:

(1) an order resulting from a hearing; or

(2) a refusal by the Commissioner to grant a hearing.

(b) *Authorized appellants.*—An appeal under this subtitle may be taken by:

(1) a party to the hearing; or

(2) an aggrieved person whose financial interests are directly affected by the order resulting from a hearing or refusal to grant a hearing.

*   *   *

(d) *Filing petition for judicial review.*—To take an appeal, a person shall file a petition for judicial review with the appropriate circuit court within 30 days after:

(1) the order resulting from the hearing was served on the persons entitled to receive it;

(2) the order of the Commissioner denying rehearing or reargument was served on the persons entitled to receive it; or

(3) the refusal of Commissioner to grant a hearing.

All references to the Insurance Article are to Maryland Code (1995, 2003 Repl. Vol.), unless otherwise indicated.

**3.** Specifically, Allstate proposed to "non-write" in the counties of Calvert, St. Mary's, Somerset, Talbot, Wicomico, and Worcester, as well as portions of Anne Arundel, Charles, Dorchester, Prince George's, and Queen Anne's Counties. The proposal to cease writing insurance policies for new customers, hereinafter, will be referred to as a "non-write."

ing on the Commissioner's "non-write" action, which was granted by the Commissioner. After a hearing was held, an Order was issued on February 2, 2008, by the Associate Deputy Commissioner, deciding that the Division had standing and ordering "that Allstate Insurance Company and Allstate Indemnity Company be and hereby are found to have met the requirements of § 19–107 of the Insurance Article; ... that [they] ... are found not to have violated § 27–501 of the Insurance Article; and ... that, a final decision on the hearing is rendered in favor of Allstate...." From this Order, the Division sought judicial review in the Circuit Court for Baltimore City, and Allstate moved for dismissal, arguing that the Division lacked standing to seek judicial review. The Judge granted Allstate's motion, holding that because the Division was not a "party" to the hearing before the Commissioner, it could not seek judicial review under Section 2–215 of the Insurance Article. The Division appealed to the Court of Special Appeals, and Allstate petitioned this Court for certiorari prior to any proceedings before the Court of Special Appeals, asking us to review the trial judge's decision to dismiss. We granted Allstate's petition and shall address the following question:

> Whether the General Assembly authorized the People's Insurance Counsel Division to file a petition for judicial review from a final decision of the Insurance Commissioner.

We shall hold that the Division is a party in matters before the Insurance Commissioner, that this constituted such a matter, and that as a party, the Division may seek judicial review from an order of the Commissioner under Section 2–215(b) of the Insurance Article.

## I. Procedural History

On December 4, 2006, Allstate notified the Insurance Commissioner, pursuant to Section 19–107 of the Insurance Article,[4] that it intended to stop accepting new homeowners insur-

---

4. Under Section 19–107 of the Insurance Article, Maryland Code (1997, 2006 Repl. Vol.), Allstate was required to file notice with the Insurance Commissioner of its proposed "non-write" action:

ance business in certain "catastrophe prone" areas, which potentially involved a large number of consumers in Maryland. Between December 2006 and May 23, 2007, the Maryland Insurance Administration conducted a review of the filing,[5] and on May 31, 2007, the Administration e-mailed its "position" to Allstate:

RE: Allstate Filings R17710, R 17712 & R 17214. Dear Mr. Wisniewski: The Maryland Insurance Administration has thoroughly reviewed the filings made under Section 19–107 of the Insurance Article by Allstate Insurance Company and Allstate Indemnity Company as referenced above. Based on the information submitted and this review, the Administration has concluded that the designation has an objective basis and is neither arbitrary nor unreasonable. Obviously, if additional information is provided or if the underlying data changes, this may change the Administration's position.

On June 1, 2007, the Division requested a hearing before the Insurance Commissioner, alleging that Allstate's filing was not

---

(a) *In general.*—An insurer may not refuse to issue or renew a contract of motor vehicle insurance, property insurance, or casualty insurance solely because the subject of the risk or the applicant's or insured's address is located in a certain geographic area of the State unless:

(1) at least 60 days before the refusal, the insurer has filed with the Commissioner a written statement designating the geographic area; and

(2) the designation has an objective basis and is not arbitrary or unreasonable.

(b) *Statement as public record.*—A statement filed with the Commissioner under this section is a public record.

5. In a footnote to the Associate Deputy Commissioner's "Memorandum of Law and Final Order," it was noted, with respect to the 19–107 filing and the 60 day notice provision, that,

Section 19–107, as currently written, is a "file and use" statute, which means that the MIA need not approve an insurer's filing before it can be effective. In this case, although the statute would have allowed Allstate to cease writing homeowner's business in the designated coastal areas 60 days after the date of filing, Allstate agreed to delay the effective date of its proposed action to allow the MIA the opportunity to review the filing.

in compliance with Section 19–107, governing "nonwrites."[6] Specifically, the Division contended that the "designation of the geographic area does not have an objective basis," and that the "designation is arbitrary and unreasonable," because Allstate made "no showing that its existing rate structure or an actuarially-based rate change is inadequate to show the extent that 'the rate is unreasonably low for the insurance provided and continued use of the rate would endanger the solvency of the insurer' per Md.Code. Ann. Ins. § 11–306(a)(3)."[7] The Division also requested a stay of the "nonwrite" filing, which would become effective on June 4, 2007.

On July 2, 2007, The Interim Insurance Commissioner granted the Division's request for a hearing but denied the stay request, stating, in pertinent part, that:

> [The Division's] request for a hearing on behalf of the People's Insurance Counsel Division (PICD) is hereby granted.

\* \* \*

---

6. The request was made pursuant to Sections 6–306 and 6–307 of the State Government Article, which sets forth the functions and powers of the People's Insurance Counsel Division. Section 6–306(a)(2) states that "[i]f the Division determines that the interests of insurance consumers are affected, the Division may appear before the Commissioner and courts on behalf of insurance consumers in each matter or proceeding over which the Commissioner has original jurisdiction," while Section 6–307 iterates that "[i]n appearances before the Commissioner and courts on behalf of insurance consumers, the Division has the rights of counsel for a party to the proceeding. . . ."

7. Section 11–306 of the Insurance Article (1997, 2006 Repl. Vol.) sets forth "rate making principles generally"; subsection (e) governs the classification of risks and states:

(e) *Classifications of risks.*—(1) Risks may be grouped by classifications for the establishment of rates and minimum premiums.

(2) Classification rates may be modified to produce rates for individual risks in accordance with rating plans that establish standards for measuring variations in hazards or expense provisions, or both.

(3) The standards may measure any difference among risks that have had a direct and substantial effect on losses or expenses.

(4) Notwithstanding any other provision of this subsection, a rate may not be based wholly or partly on geographic area itself, as opposed to underlying risk considerations, even though expressed in geographic terms.

[The Division's] request for a hearing does not stay the implementation of Allstate's filings. Those filings were not subject to prior approval by the Administration and the Administration issued no order approving the implementation of the filings. By statute, the filings may be implemented 60 days after they are filed. Preventing the implementation of the filings would require an affirmative order by the Administration, based on a finding that the filings did not meet the statutory criteria. Hence, while I have recognized the standing of PICD to request a hearing on the Administration's decision not to order Allstate to halt the implementation of its filings (as amended), there is no affirmative order of the Administration which is subject to being stayed by [the Division's] request.

Allstate filed a motion to intervene and a motion to dismiss the Division's request for a hearing, asserting that the Division lacked standing to challenge its filing. In an "Order on Motions," dated August 31, 2007, the Interim Commissioner granted Allstate's request to intervene in the hearing,[8] but denied its motion to dismiss, preliminarily determining that the Division had "standing to pursue this proceeding." A hearing was held in December of 2007, and four issues were presented:

1. Does PICD have standing to request a hearing?

2. When an insurer makes a filing pursuant to Ins. § 19–107, in which the insurer designates a geographic area in the state in which the insurer plans to refuse to issue or renew motor vehicle, property or casualty insurance, is the underwriting standard by which the geographic designation will be implemented exempted from the Insurance Article's prohibition on discrimination in underwriting, which is set forth in Ins. § 27–501?[9]

---

8. The Commissioner specifically found that although Allstate was not a party when PICD sought and was granted a hearing, "Allstate clearly has the right to intervene and become a party."

9. Section 27–501 of the Insurance Article, Maryland Code (1997, 2006 Repl. Vol.), governs "discrimination in underwriting," and states, in part:

3. Did Allstate satisfy its burden of showing that its underwriting standard, upon which it will base its refusal to write new homeowner's business in Hurricane Bands 4–6, actually exists, is lawful, and will be applied in a manner that is reasonably related to Allstate's business and economic purposes, as required by Ins. § 27–501?

4. Did Allstate satisfy its burden of demonstrating, as required by Ins. § 19–107, that its designation of the geographic area in which it will refuse new business has an objective basis and is not arbitrary or unreasonable?

At the termination of the hearing, an associate deputy commissioner,[10] in a written memorandum, determined:

I.  PICD had standing to request a hearing on this matter.

II.  In light of PICD's challenge to Allstate's decision to cease writing new business in designated coastal regions, Allstate had the burden of persuasion to demonstrate: that the underwriting standard to be applied to refuse coverage in the designated areas is not discriminatory and was reasonably related to Allstate's business and economic purposes, as required by Ins. § 27–501, and that the geographic designation upon which Allstate based its refusal to issue new homeowner's business was objective and was not arbitrary or unreasonable.

III.  Allstate has satisfied its burden, pursuant to § 27–501, of showing that its underwriting standard, by which it will refuse new homeowner's business in Hurricane Bands 4–6

---

(a) *In general.*—(1) An insurer or insurance producer may not cancel or refuse to underwrite or renew a particular insurance risk or class of risk for a reason based wholly or partly on race, color, creed, sex, or blindness of an applicant or policyholder or for any arbitrary, capricious, or unfairly discriminatory reason. (2) Except as provided in this section, an insurer or insurance producer may not cancel or refuse to underwrite or renew a particular insurance risk or class of risk except by the application of standards that are reasonably related to the insurer's economic and business purposes.

10.  Section 2–210 of the Insurance Article, gives the Insurance Commissioner the authority to delegate the responsibility for holding a hearing to "the Deputy Commissioner, an associate deputy commissioner, or an associate commissioner."

actually exists, is not discriminatory, and is reasonably related to its business and economic purposes.

IV. Allstate has satisfied its burden of showing it has complied with Ins. § 19–107 by filing a timely geographic designation reflecting the areas in which it will cease to writing new homeowner's business because Allstate's timely designation is objective, reasonable, and not arbitrary.

With respect to the Division's standing, the associate deputy commissioner interpreted Section 6–306 of the State Government Article and determined that it provided the Division with the ability to represent consumers at-large:

PICD was created by the Maryland General Assembly during its special session in December 2004. The purpose of the PICD is to protect, through statutorily prescribed means, the interests of persons insured under policies of medical professional liability or homeowner's policies issued or delivered in the State. The PICD is authorized, in pertinent part, to do the following:

(a)(1) The Division shall evaluate each medical professional liability insurance and homeowner's insurance matter pending before the Commissioner to determine whether the interests of insurance consumers are affected.

(2) If the Division determines that the interests of insurance consumers are affected, the Division may appear before the Commissioner and courts on behalf of insurance consumers in each matter or proceeding. . . .

\* \* \*

(c) As the Division considers necessary, the Division shall conduct investigations and request the Commissioner to initiate an action or proceeding to protect the interests of insurance consumers.

State Gov't § 6–306.

Allstate challenges the standing of PICD to a request a hearing in this matter on the grounds that PICD is not an "aggrieved person," citing the case of *Sugarloaf Citizens' Ass'n v. Dep't of Env't*, 344 Md. 271, 288, 686 A.2d 605 (1996). It is true that the Commissioner has relied upon the *Sugarloaf* case in the past when it has ruled that organiza-

tions lack standing. *See, e.g.,* Final Order, *Allan Pollack, M.D. et al. v. United Healthcare Insurance Company,* MIA–2005–12101. However, unlike associations such as Med Chi, which have been denied administrative standing by the Commissioner in the past, PICD has been granted authority by the General Assembly to act on behalf of insurance consumers in this State and to protect the interests of those consumers. Thus, there is a meaningful difference between the status of an association and the PICD, which is statutorily authorized to participate in proceedings before the Commissioner.

The ruling continued by differentiating two prior determinations of the Insurance Administration, *Maryland Insurance Administration (Ex Rel David & Delores Finney) v. Standard Fire Insurance Company,* Case No. MIA–2006008–22, and *Maryland Insurance Administration (Ex Rel Lenora Stevenson) v. Erie Insurance Exchange,* Case No. MIA–2006–07–24, wherein the Commissioner determined that the Division lacked standing to seek a formal hearing. Recognizing that these cases involved "individual consumer complaints arising from a proposed non-renewal of homeowner's insurance policies," whereas the "instant case" involved Allstate's decision to cease writing new homeowner's insurance having a "widespread impact" affecting many consumers, the associate deputy commissioner ruled that the Division had standing because it "is authorized to protect the interest of such insurance consumers." In addressing Allstate's other contention, that the Division lacked standing because it is only authorized to act as legal representative to "insurance consumers,"[11] but could not request a hearing without an individual consumer complaint, the ruling continued that, by requesting a hearing, the Division was fulfilling the precise duty for which it was created—to act on behalf of a class of insurance consumers generally:

---

**11.** Section 6–301(f) of the State Government Article, Maryland Code (1984, 2004 Repl. Vol., 2007 Supp.), defines insurance consumers as "persons insured under policies or contracts of ... homeowners insurance issued or delivered in the State by a ... homeowners insurer."

Through its hearing request and participation at the hearing, PICD is acting on behalf of the class of insurance consumers it was created to protect. First, if Allstate ceases to write new business in a particular geographic area, that is one less option available for consumers who have purchased homeowner's coverage from an Allstate competitor, but who may wish to consider other coverage arrangements. In this way, Allstate's action would, in fact, impact current insurance consumers. Second, I disagree with Allstate that the PICD was intended to protect only its existing policyholders. Unlawful underwriting, by its very nature, would deny coverage to an applicant. Adoption of Allstate's interpretation of the statute would effectively gut the authority of PICD to challenge unlawful underwriting decisions. I do not believe that this is the result the legislature intended.

For these reasons, I conclude that by initiating this proceeding PICD is protecting the interests of "insurance consumers" as that term is defined in § 6–301(f) of the State Government Article and that, under the circumstances presented in this case, the legislature has granted PICD had standing to a request a hearing pursuant to Ins. § 2–210.[12]

The memorandum concluded:

**WHEREFORE,** it is hereby:

**ORDERED,** that Allstate Insurance Company and Allstate Indemnity Company, be an hereby are found to have met

---

**12.** Section 2–210 of the Insurance Article governs hearings before the Maryland Insurance Administration and states:

(a) *In general.*—(1) The Commissioner may hold hearings that the Commissioner considers necessary for any purpose under this article.
(2) The Commissioner shall hold a hearing:
(i) if required by any provision of this article; or
(ii) on written demand by a person aggrieved by any act of, threatened act of, or failure to act by the Commissioner or by any report, regulation, or order of the Commissioner, except an order to hold a hearing or an order resulting from a hearing.
(b) *Demand for hearing; action by Commissioner.*—(1) A demand for a hearing shall state the grounds for the relief to be demanded at the hearing.

the requirements of § 19–107 of the Insurance Article; and it is further

**ORDERED,** that Allstate Insurance Company and Allstate Indemnity Company be, and hereby are found not to have violated § 27–501 of the Insurance Article; and it is further

**ORDERED** that, a final decision on the hearing is rendered in favor of Allstate Insurance Company and Allstate Indemnity Company....

On February 29, 2008, the Division filed a Petition for Judicial Review in the Circuit Court for Baltimore City. Allstate filed a Motion to Dismiss the Petition for Judicial Review and Request for a Hearing, arguing that the Division did not have standing to seek judicial review, because it was neither a "party" nor an "aggrieved" person, and that the Legislature did not intend to grant the Division power to appear as a party without representing an individual complainant. After numerous other motions and memoranda were filed, a hearing was held before a Judge of the Circuit Court of Baltimore City. In an order filed July 15, 2008, the Judge granted Allstate's Motion to Dismiss, ruling that the Division did not have standing to seek judicial review, as it was not a "party" to the hearing before the Commissioner, because the Legislature had only granted the Division "the rights of

---

(2) Within 30 consecutive days after receiving a demand for a hearing, the Commissioner shall:
(i) grant and, unless postponed by mutual consent of the parties, hold the hearing; or
(ii) issue an order refusing the hearing.
(3) If the Commissioner does not grant or refuse a hearing within the 30–day period, the hearing is deemed to have been refused.
(c) *Applicability of Administrative Procedure Act.*—(1) Except as provided in paragraph (2) of this subsection, a hearing held under this section shall be conducted in accordance with Title 10, Subtitle 2 of the State Government Article (Administrative Procedure Act—Contested Cases).
(2) A hearing held under this section is not subject to § 10–216 of the State Government Article.
(d) *Delegation of hearing authority.*—The Commissioner may delegate to the Deputy Commissioner, an associate deputy commissioner, or an associate commissioner the responsibility for holding a hearing under this section or § 4–114 of this article.

counsel to a party to a proceeding" in Section 6–307 of the State Government Article. Because the Division was not a "party" to the hearing, the Judge continued, it was not eligible to seek judicial review under Section 2–215 of the Insurance Article:

> (1) In appearances before the Commissioner and courts on behalf of insurance consumers, the People's Insurance Counsel Division (PICD) has "the rights of counsel to a party" to the proceeding. MD. CODE ANN. STATE GOV'T § 6–307 (2008). The Insurance Article of the Maryland Annotated Code provides that an appeal of an order of the Insurance Commissioner following a hearing may be taken by either (1) a party to the hearing; or (2) an aggrieved person whose financial interests are directly affected by the order resulting from a hearing or refusal to grant a hearing. MD. CODE ANN. INS. § 2–215(b) (2008). The PICD does not have the right to appear as a party to a proceeding before the Commissioner or before a court and cannot become a party by participating in a hearing as counsel to a party.
>
> (2) The Insurance Commissioner did not have the authority to grant the PICD standing to appear as a party to a hearing before the Commission as the PICD has only been granted "the rights of counsel to a party" to a proceeding before the Commission.

In addressing the Division's contention that this Court's opinion in *Public Serv. Comm'n v. Maryland People's Counsel*, 309 Md. 1, 522 A.2d 369 (1987), conclusively determined that the Legislature intended that the Division have the ability to have standing as a party before courts when protecting the interests of consumers, the Judge distinguished the Public Service Commission from the Insurance Administration, observing, in particular, that Section 3–202 of the Public Utility Companies Article explicitly states that the People's Counsel can seek judicial review,[13] whereas Section 2–215 of the Insurance Article makes no such explicit reference to the Division:

---

13. Section 3–202(a) of the Public Utility Companies Article, Maryland Code (1998, 2008 Repl. Vol.), states, in pertinent part, that, "a party or

(3) Although the respective functions of the PICD and Office of the People's Counsel (OPC) are similar in some respects, their enabling statutes differ in a significant way. Both entities have been expressly provided "the rights of counsel to a party" to the proceeding before the Commission and courts on behalf of consumers (PICD) or residential and noncommercial users (OPC) (Compare MD.CODE ANN. STATE GOV'T § 6–307(a) and MD.CODE ANN. PUB. UTIL. COS. § 2–205(a)); the right to appear before any federal or State tribunal or agency, in a judicial or administrative action, to protect the interests of consumers or residential and noncommercial users (compare MD.CODE ANN. STATE GOV'T 6–307(b) and MD.CODE ANN. PUB. UTIL. COS. 2–205(b)); and the right to appear before the Commission and courts on behalf of consumers or residential and noncommercial users in each matter or proceeding over which the Commission has original jurisdiction, if the PICD or OPC determines that the interest of insurance consumers or residential and noncommercial users are affected. (Compare MD.CODE ANN. STATE GOV'T § 6–206(a)(2) and MD.CODE ANN. PUB. UTIL. COS. § 2–204(a)(2)).

However, the Legislature has expressly conferred only upon the OPC the power to seek judicial review of a final decision or order of the Commission if the OPC is dissatisfied with the final decision or order. (See MD.CODE ANN. PUB. UTIL. COS. § 3–202(a) (2008)). No comparable provision exists for the PICD. Thus, because the PICD has not been expressly authorized by statute to seek judicial review of a commissioner's final decision or order, it may not do so on its own behalf, and because the PICD does not represent any individual consumers in this action, it may not seek judicial review in the case *sub judice.*

Both the Division and the Maryland Insurance Commissioner noted appeals to the Court of Special Appeals, and Allstate,

---

person in interest, *including the People's Counsel,* that is dissatisfied by a final decision or order of the Commission may seek judicial review of the decision or order as provided in this subtitle" (emphasis added).

thereafter, petitioned this Court for certiorari. *People's Ins. v. Allstate,* 406 Md. 112, 956 A.2d 201 (2008).

## II. Discussion

We are tasked with interpreting Chapter 5 of the Maryland Patients' Access to Quality Health Care Act, enacted during the 2004 Special Session,[14] which created and prescribed the powers and duties of the People's Insurance Counsel Division, as well as portions of the Insurance Article governing judicial review of orders of the Insurance Commissioner and hearings before the Insurance Commissioner. Our analysis is limited to whether the Division may initiate a judicial review action, rather than the merits of the controversy, because the Circuit Court's ruling was confined to the standing issue.

In statutory interpretation, our primary goal is always "to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." *Barbre v. Pope,* 402 Md. 157, 172, 935 A.2d 699, 708 (2007); *Gen. Motors Corp. v. Seay,* 388 Md. 341, 352, 879 A.2d 1049, 1055 (2005). *See also Dep't of Health & Mental Hygiene v. Kelly,* 397 Md. 399, 419–20, 918 A.2d 470, 482 (2007). We begin our analysis by first looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that " 'no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.' " *Barbre,* 402 Md. at 172, 935 A.2d at 708; *Kelly,* 397 Md. at 420, 918 A.2d at 482. *See also Kane v. Bd. of Appeals of Prince George's County,* 390 Md. 145, 167, 887 A.2d 1060, 1073 (2005). If the language of the statute is clear and unambiguous, we need not look beyond the statute's provisions, and our analysis ends. *Barbre,* 402 Md. at 173, 935 A.2d at 708–09; *Kelly,* 397 Md. at 419, 918 A.2d at 482; *City of Frederick v.*

---

**14.** The Act, with respect to the creation of the Division, was codified in Sections 6–301 *et seq.* of the State Government Article, Maryland Code (1984, 2004 Repl. Vol., 2005 Supp.), and was amended by Chapter 1 of the Maryland Laws of 2005. *See* Md.Code (1984, 2004 Repl. Vol., 2006 Supp.), Section 6–301 *et seq.* of the State Government Article.

*Pickett,* 392 Md. 411, 427, 897 A.2d 228, 237 (2006). If, however, the language is subject to more than one interpretation, or when the language is not clear when it is part of a larger statutory scheme, it is ambiguous, and we endeavor to resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose, as well as the structure of the statute. *Barbre,* 402 Md. at 173, 935 A.2d at 709; *Kelly,* 397 Md. at 419–20, 918 A.2d at 482; *Smack v. Dep't of Health & Mental Hygiene,* 378 Md. 298, 305, 835 A.2d 1175, 1179 (2003).

The Maryland Patient's Access to Quality Health Care Act included provisions,

> *establishing a People's Insurance Counsel Division* in the Office of the Attorney General; providing for the appointment, qualifications, and compensation of the People's Insurance Counsel; requiring the Attorney General's Office to provide money in its annual budget for the People's Insurance Counsel Division; authorizing the Division to retain or hire certain experts; requiring the People's Insurance Counsel to administer and operate the People's Insurance Counsel Division; establishing the People's Insurance Counsel Fund; requiring the Maryland Insurance Commissioner to collect a certain assessment from certain insurers and deposit the amounts collected into the People's Insurance Counsel Fund; *establishing the duties of the Division; establishing certain rights of the Division in appearances before the Commissioner and courts on behalf of insurance consumers; authorizing the Division to appear before any unit of State or federal government to protect the interest of insurance consumers;* providing that the Division shall have full access to certain records under certain circumstances; providing that the Division is entitled to the assistance of certain staff under certain circumstances; authorizing the Division to recommend certain legislation to the General Assembly; requiring the Division to report on its activities to the Governor and the General Assembly on or before a certain date. . . .

2004 Maryland Laws, Special Session, Chapter 5 (emphasis added). Section 6–306 of the State Government Article, describes the "functions" of the Division and states, in pertinent part:

(a) *Evaluation of pending matters.*—(1) The Division shall evaluate each medical professional liability insurance and homeowners insurance matter pending before the Commissioner to determine whether the interests of insurance consumers are affected.

(2) If the Division determines that the interests of insurance consumers are affected, the Division may appear before the Commissioner and courts on behalf of insurance consumers in each matter or proceeding over which the Commissioner has original jurisdiction.

(b) *Review of certain rate increases.*—

\* \* \*

(c) *Investigations and initiation of actions or proceedings.*—As the Division considers necessary, the Division shall conduct investigations and request the Commissioner to initiate an action or proceeding to protect the interests of insurance consumers.

Section 6–307(a) and (b) then prescribes the "Powers" of the Division, when appearing before courts or agencies:

(a) *Appearances before Commissioner and courts.*—In appearances before the Commissioner and courts on behalf of insurance consumers, the Division has the rights of counsel for a party to the proceeding, including the right to:

(1) summon witnesses, present evidence, and present argument;

(2) conduct cross-examination and submit rebuttal evidence; and

(3) take depositions in or outside of the State:

(i) in proceedings before the Commissioner, subject to regulation by the Commissioner to prevent undue delay; and

(ii) in proceedings in court, in accordance with the procedure provided by law or rule of court.

(b) *Appearances before federal and State tribunal or agency.*—The Division may appear before any federal or State tribunal or agency, in a judicial or administrative action, to protect the interests of insurance consumers.

Section 6–301 is the definitional section, stating, in pertinent part:

(b) *Commissioner.*—"Commissioner" means the Maryland Insurance Commissioner.

(c) *Division.*—"Division" means the People's Insurance Counsel Division in the Office of the Attorney General.

\* \* \*

(f) *Insurance consumers.*—"Insurance consumers" means persons insured under policies or contracts of medical professional liability insurance, and homeowners insurance issued or delivered in the State by a medical professional liability insurer or a homeowners insurer.

*Insurer.*—"Insurer" means a medical professional liability insurer or a homeowners insurer authorized to engage in the insurance business in the State under a certificate of authority issued by the Commissioner.

*Id.*[15]

Also implicated are two provisions of the Insurance Article. Section 2–210 provides the Commissioner with discretion to call a hearing for any purpose under the Insurance Article, but mandates that hearings be held under certain circumstances:

(a) *In general.*—(1) The Commissioner may hold hearings that the Commissioner considers necessary for any purpose under this article.

(2) The Commissioner shall hold a hearing:

---

**15.** Section 6–302 of the State Government Article establishes the Division within the Office of the Attorney General; Section 6–303 governs the administration and direction of the Division, Section 6–304 provides for funding for the Division, and Section 6–305 creates a People's Insurance Counsel Fund "to pay all costs and expenses incurred by the Division in carrying out its duties. . . ."

(i) if required by any provision of this article; or

(ii) on written demand by a person aggrieved by any act of, threatened act of, or failure to act by the Commissioner or by any report, regulation, or order of the Commissioner, except an order to hold a hearing or an order resulting from a hearing.

(b) *Demand for hearing; action by Commissioner.*—(1) A demand for a hearing shall state the grounds for the relief to be demanded at the hearing.

(2) Within 30 consecutive days after receiving a demand for a hearing, the Commissioner shall:

(i) grant and, unless postponed by mutual consent of the parties, hold the hearing; or

(ii) issue an order refusing the hearing.

(3) If the Commissioner does not grant or refuse a hearing within the 30-day period, the hearing is deemed to have been refused.

(c) *Applicability of Administrative Procedure Act.*—(1) Except as provided in paragraph (2) of this subsection, a hearing held under this section shall be conducted in accordance with Title 10, Subtitle 2 of the State Government Article (Administrative Procedure Act–Contested Cases).

(2) A hearing held under this section is not subject to § 10–216 of the State Government Article.

(d) *Delegation of hearing authority.*—The Commissioner may delegate to the Deputy Commissioner, an associate deputy commissioner, or an associate commissioner the responsibility for holding a hearing under this section or § 4–114 of this article.

Section 2–215 of the Insurance Article governs "appeals," although more appropriately called judicial review actions, and states in relevant part:

(a) *Authorized appeals.*—An appeal under this subtitle may be taken only from:

(1) an order resulting from a hearing; or

(2) a refusal by the Commissioner to grant a hearing.

(b) *Authorized appellants.*—An appeal under this subtitle may be taken by:

(1) a party to the hearing; or

(2) an aggrieved person whose financial interests are directly affected by the order resulting from a hearing or refusal to grant a hearing.

\* \* \*

(h) *Judgment.*—The court to which an appeal is taken may:

(1) affirm the decision of the Commissioner;

(2) remand the case for further proceedings; or

(3) reverse or modify the decision of the Commissioner if substantial rights of the petitioners may have been prejudiced because administrative findings, inferences, conclusions, or decisions:

(i) violate constitutional provisions;

(ii) exceed the statutory authority or jurisdiction of the Commissioner;

(iii) are made by unlawful procedure;

(iv) are affected by other error of law;

(v) are unsupported by competent, material, and substantial evidence in view of the entire record, as submitted; or

(vi) are arbitrary or capricious.

\* \* \*

(j) *Appeal to Court of Special Appeals.*—(1) Any party, including the Commissioner, may appeal from the judgment of the circuit court to the Court of Special Appeals as in other civil cases.

(2) The judgment of the circuit court may be stayed only by order of court on the giving of any security that the court considers proper.

The gravamen of the current dispute is whether the Division can seek judicial review from an Order of the Insurance Commissioner. The Division and the Maryland Insurance Administration, which is another appellant before us, argue that the plain meaning of Section 2–215 of the Insurance Article and Sections 6–301 *et seq.* of the State Government

Article, grant the Division "party" status in hearings before the Commissioner and the ability to seek judicial review. They also posit that the Legislature, in enacting the statute establishing the Division, intended to mimic the Office of the People's Counsel of the Public Service Commission, as evidenced by the similarities between the language and structure of the statutes prescribing the functions and powers of the entities, and that as a result, our opinion in *PSC v. MPC*, 309 Md. at 1, 522 A.2d at 369, granting party status to the PSC's People's Counsel, should apply to the Division.

Allstate responds by asserting that the Legislature did not grant the Division the power to appear as a party before the Insurance Commissioner in a matter where no complaint has been lodged, and alternatively, that as a party, the Division could not seek judicial review, because there was no matter pending before the Commissioner. Allstate also contends that to interpret the statute as permitting the Division to have the power of judicial review, would be to interpret it in a way that creates a conflict of interest, because the Division is housed within the Office of the Attorney General and the Office of the Attorney General represents the Maryland Insurance Administration.

The first issue that we address is whether the Legislature intended to confer upon the Division the status of "party," when representing the interest of consumers generally before the Maryland Insurance Commissioner. The language primarily in dispute is, "the Division has the *rights of counsel for a party to the proceeding*," (emphasis added) from Section 6–307(a) of the State Government Article. The language of subsection (b), "[t]he Division may appear before any federal or State tribunal or agency, in a judicial or administrative action, to protect the interests of insurance consumers," is also of import. While the Division asserts that the language clearly supports its party status, Allstate asserts that the Legislature would have added the words "as a party," as it did in Section 2–202(b)(2) of the Insurance Article (granting the Human Relations Commission the power to "appear before the Commissioner *as a party* at a hearing about discriminatory

practices" (emphasis added)), had it intended to confer party status upon the Division. Similarly, Allstate compares the judicial review provision in Section 3–202 of the Public Utility Companies Article with the judicial review provision in Section 2–215 of the Insurance Article, observing that the Public Utility Companies Article explicitly makes the Office of the People's Counsel a "party or person in interest," while such explication is omitted in Section 2–215 of the Insurance Article. Allstate also argues that other bills proposed at the time of the bill adopting the Division would have explicitly conferred party status upon the Division, but none of these bills was adopted.

We disagree with Allstate. Allstate's argument that the Division has only the rights of counsel, but not the standing of a party, is too narrowly focused on the language of Section 6–307(a) of the State Government Article ("In appearances before the Commissioner and courts on behalf of insurance consumers, the Division has the rights of counsel for a party to the proceeding . . . ."), without sufficiently accounting for the language of subsection (b) ("The Division may appear before any federal or State tribunal or agency, in a judicial or administrative action, to protect the interests of insurance consumers."). Looking at the normal, plain meaning of the words used and reading the statute as a whole, so that no phrase or clause is rendered nugatory, it is clear that subsection (a) is aimed at prescribing *what* the Division may do when appearing before the Commission or courts, whereas subsection (b) is intended to prescribe *when* the Division may appear. Thus, so long as the Division is appearing "to protect the interests of insurance consumers," as they are here, they may appear as a "party" to the proceeding.

This interpretation, furthermore, is consistent with our decision in *PSC v. MPC,* in which the PSC argued that the PSC People's Counsel was not intended to be a "party" in proceedings before courts. We concluded, interpreting a statute nearly identical to the one prescribing powers to the Divi-

sion,[16] that the People's Counsel had the ability to appear as a party when appearing on behalf of consumers:

> The Commission also argues that the rights of People's Counsel are not threatened. This argument is misfocused because the relevant legal rights are not those of individuals comprising the Office of People's Counsel, but those of the residential customers that People's Counsel is statutorily obligated to protect. As previously stated, People's Counsel has the power to bring suit "on behalf of [residential] users in all matters or proceedings over which the Commission has original jurisdiction." Maryland Code (1957, 1980 Repl. Vol.), Art. 78, § 15(a). Thus, *People's Counsel brings suit under § 89 not to protect his own rights, but to protect the rights of all residential utility customers in Maryland.*

*PSC v. MPC,* 309 Md. at 10 n. 3, 522 A.2d at 373 n. 3 (emphasis added).

Allstate, however, proffers two consolidated determinations of the Insurance Commissioner, *Maryland Insurance Administration v. Standard Fire Insurance Company,* Case No. MIA–2006–08–22, and *Maryland Insurance Administration v. Erie Insurance Exchange,* Case No. MIA–2006–07–24, to further its contention that, unlike the PSC People's Counsel, the Legislature only intended that the Division be capable of representing specific consumers before the Commissioner. In these two determinations, the issue addressed was "whether the PICD ... has standing to initiate or to continue a hearing before the Maryland Insurance Administration (MIA) in an

---

**16.** In *PSC v. MPC,* we interpreted Section 15(a) of Article 78, Maryland Code (1957, 1980 Repl. Vol.), which is currently codified without significant change in Section 2–205 of the Public Utility Companies Article, Maryland Code (1998, 2008 Repl. Vol.), and pertains to the "Powers" of the Public Service Commission to appear before the PSC or courts:

> (a) *Rights.*—In appearances before the Commission and courts on behalf of residential and noncommercial users, the Office of People's Counsel has the rights of counsel for a party to the proceeding, including those rights specified in § 3–107 of this article.
>
> (b) *Jurisdiction.*—The Office of People's Counsel may appear before any federal or State unit to protect the interests of residential and noncommercial users.

individual consumer complaint where the consumer whose complaint initiated the case elected not to proceed." *Id.* at 1. In both cases, the Insurance Commissioner determined that the Division did not have standing to request a hearing when the individual complainant withdrew, because a "consumer complaint is a complaint that is initiated by an individual who has been personally and directly harmed by an action of an insurance company and who asks the [Maryland Insurance Administration] to force the company to reverse their action and, thereby, come into compliance with the law." *Id.* at 12. He reasoned, moreover, that the Division, on the other hand, was empowered to evaluate "matter[s] *pending* before the Commissioner to determine whether the interest of insurance consumers are affected," and "shall conduct investigations and request the Commissioner *to initiate* an action or proceeding to protect the interests of insurance consumers," *id.* at 13 (emphasis in original), rather than to intervene in the unique circumstances of any particular consumer. The Commissioner, thus, concluded that in cases of consumer complaints, the Legislature intended that the Division assume a role similar to that of "an *amicus* participant in an appellate proceeding," because "in a consumer complaint hearing," the question is "whether an insurer violated the law with respect to a specific policyholder on a specific policy," which "would not have a direct and immediate financial impact on other policyholders." *Id.* at 17, 20.[17]

In contrast, in this case, involving the decision not to write insurance in a geographic area, the financial impact is on many policyholders rather than one specific policyholder or a specific policy. The Division, moreover, was created specifically for the purpose of evaluating matters affecting insurance consumers, Section 6–306(a)(1) of the State Government Article, and was granted the explicit power to appear "in a judicial or administrative action, *to protect the interest of insurance consumers.*" Section 6–307(b) (emphasis added). As a result,

---

**17.** In differentiating these determinations, we should not be understood to endorse them.

we conclude that the Division has standing to appear as a party in a matter pending before the Commissioner.

Allstate argues, thereafter, that the lack of explicit language in the judicial review statute of the Insurance Article is illustrative of legislative intent not to permit the Division to seek judicial review. The Circuit Court Judge found this argument to be determinative, when she compared the judicial review provision of the Public Service Companies Article ("a party or person in interest, including the People's Counsel, that is dissatisfied by a final decision or order of the Commission may seek judicial review of the decision ...") to the judicial review provision of the Insurance Article (stating that only "a party to a hearing" or an "aggrieved person" may seek judicial review), and ruled that the absence of language explicitly referencing the Division in the Insurance Article was dispositive.

In this respect, we disagree with Allstate and with the Circuit Court Judge, based on the legislative intent to copy the PSC People's Counsel when creating the Division, and our opinion in *PSC v. MPC,* 309 Md. at 1, 522 A.2d at 369. The Revised Fiscal and Policy Note contained in the bill file for the Maryland Patients' Access to Quality Health Care Act supports a legislative intent to copy the operations of the PSC People's Counsel when creating the Division:

**People's Insurance Counsel**

\* \* \*

The Office of People's Counsel (OPC) performs a similar function to the proposed People's Insurance Counsel. OPC evaluates all matters pending before the Public Service Commission (PSC) to determine if the interests of residential users of public utilities are affected. It appears before PSC, various federal agencies, and the courts on behalf of consumers in all matters or proceedings over which PSC has original jurisdiction and in other matters in which OPC deems its interests to be involved.

In *PSC v. MPC,* furthermore, we held that the inherent powers conferred by the Legislature upon the PSC People's

Counsel gave it the ability to seek judicial review, *irrespective* of the lack of explicit language in a judicial review provision. 309 Md. at 10, 522 A.2d at 373. In that case, the PSC People's Counsel initiated an action in the Circuit Court for Baltimore City, challenging, as unconstitutional, certain regulations promulgated by the Commission that established the procedural context for terminating a residential customer's service. After the Circuit Court ruled that the provisions were unconstitutional because a pretermination hearing was not required, the PSC argued before this Court that the PSC People's Counsel did not have the ability to seek judicial review, because the Legislature did not explicitly refer to the PSC People's Counsel in the section governing judicial review of rule promulgations,

> (a) *In general.*—Notwithstanding § 10–120 of the State Government Article, the validity of a regulation of the Commission shall be challenged in accordance with § 10–125 of the State Government Article.

> (b) *Time for judicial review.*—A party to a Commission proceeding, a person that has been granted intervention in a Commission proceeding, or a person that has been ordered to participate in a Commission proceeding that seeks to challenge a decision by the Commission to act by order rather than regulation shall seek judicial review of the Commission's decision within 30 days after the Commission issues a final order in that proceeding.

Section 3–201 of the Public Utilities Article, Maryland Code (1998, 2008 Repl. Vol.),[18] but the legislature did explicitly mention the PSC People's Counsel in the Section governing "judicial review of orders and decisions" of the PSC:

> (a) *In general.*—Except for the staff of the Commission, a party or person in interest, including the People's Counsel, that is dissatisfied by a final decision or order of the

---

18. The applicable Sections of the Public Utility Companies Article have not been changed significantly since *PSC v. MPC,* 309 Md. at 1, 522 A.2d at 369.

Commission may seek judicial review of the decision or order as provided in this subtitle.

Maryland Code (1998, 2008 Repl. Vol.), Section 3–202 of the Public Utilities Article.

We held, however, that the legislative intent to confer upon the PSC People's Counsel the power of judicial review, in either context, was apparent from those Sections prescribing the general "Duties" and "Powers" of the People's Counsel: [19]

### Duties

(a) *Protecting interests.*—(1) The Office of People's Counsel shall evaluate each matter pending before the Commission to determine if the interests of residential and noncommercial users are affected.

(2) If the Office of People's Counsel considers the interest of residential and noncommercial users to be affected, the Office of People's Counsel shall appear before the Commission and courts on behalf of residential and noncommercial users in each matter or proceeding over which the Commission has original jurisdiction, including a proceeding on the rates, service, or practices of a public service company or on a violation of this article.

(3) As the Office of People's Counsel considers necessary, the Office of People's Counsel shall conduct investigations and request the Commission to initiate proceedings to protect the interests of residential and noncommercial users.

### Powers

---

19. In ruling that the inherent powers of the People's Counsel gave it the ability to challenge the validity of a regulation, we began by distinguishing the case of *Bosley v. Dorsey*, 191 Md. 229, 240, 60 A.2d 691, 696 (1948), where we held that the People's Counsel "lacked the power to *appeal* a Commission order," *PSC v. MPC*, 309 Md. at 9, 522 A.2d at 372 (emphasis in original). We observed that the rationale in *Bosley* did not apply after 1955, when the Legislature created the office of the General Counsel to the PSC and changed the role of the People's Counsel from representing the PSC to representing the interests of residential utility consumers. *Id.* at 9, 522 A.2d at 373 ("[T]he rationale of *Bosley* no longer prevents People's Counsel from challenging actions of the Commission and appearing in court on behalf of residential consumers."); *see also* 1955 Md. Laws, Chap. 441.

(a) *Rights.*—In appearances before the Commission and courts on behalf of residential and noncommercial users, the Office of People's Counsel has the rights of counsel for a party to the proceeding, including those rights specified in § 3–107 of this article.

(b) *Jurisdiction.*—The Office of People's Counsel may appear before any federal or State unit to protect the interests of residential and noncommercial users.

Maryland Code (1998, 2008 Repl. Vol.), Sections 2–204(a) & 2–205(a)–(b) of the Public Utilities Article. In so doing, we regarded it as insignificant that one judicial review provision made explicit reference to the People's Counsel's ability to seek judicial review, whereas the other one did not, because the People's Counsel was generally charged with appearing before courts and the Commission *on behalf of* residential utility consumers:

> People's Counsel is charged with evaluating all matters pending before the Commission to determine if residential users of utility services are affected. Maryland Code (1957, 1980 Repl. Vol.), Art. 78, § 15(a). Moreover, People's Counsel is given the power to "appear before the Commission and the courts *on behalf of those users*" in all cases where People's Counsel deems the interests of residential users are involved. *Id.* (emphasis added). Furthermore, People's Counsel is granted all the rights of counsel for a party to the proceeding. *Id.* Therefore, People's Counsel has standing to bring suit under § 89 to protect the interests of residential utility customers.

*PSC v. MPC,* 309 Md. at 10, 522 A.2d at 373 (emphasis in original).

■ What is dispositive in the present case is that the language establishing the powers of the Division is almost identical to that which we relied upon in *PSC v. MPC* to determine that the PSC People's Counsel could seek judicial review. The language, moreover, was adopted by the Legislature in 2004, well after our decision in *PSC v. MPC.* We often have acknowledged that when the Legislature acts, it does so

with knowledge of our decisions. *See Romm v. Flax,* 340 Md. 690, 698, 668 A.2d 1, 4 (1995) (When construing statutes, "[w]e presume that the legislature is aware of our decisions." (citations omitted)). Certainly, the parallel nature of the legislative enactments regarding the inherent powers of the PSC People's Counsel and the Division is strong support for our interpretation that the Division may seek judicial review. *See, e.g., State v. Purcell,* 342 Md. 214, 224, 674 A.2d 936, 941 (1996) (finding parallel construction illustrative of legislative intent when interpreting a five-year statute of limitations provision of the Crimes and Punishments Article of the Maryland Code); *J.I. Case Credit Corp. v. Insley,* 293 Md. 483, 491, 445 A.2d 689, 693 (1982) (finding parallel construction illustrative of legislative intent when interpreting the meaning of certain requirements under the Corporations and Associations Article).

Allstate posits, nevertheless, that the filing of its decision not to write insurance in the delineated areas did not create a "matter" that was "pending" before the Commissioner, because Section 19–107 of the Insurance Article is a "file and use statute." The language in issue specifies: "(1) The Division shall evaluate each ... insurance matter pending before the Commissioner to determine whether the interests of insurance consumers are affected[;] (2) If the Division determines that the interests of insurance consumers are affected, the Division may appear before the Commissioner and courts on behalf of insurance consumers in each matter or proceeding over which the Commissioner has original jurisdiction." Section 6–306(a) of the State Government Article.

Allstate argues that had the Commissioner *disapproved* of the filing, it could have requested a hearing, while the converse, Allstate argues, is not true. Allstate asserts that when the Insurance Commissioner took the position that Allstate could proceed with its "non-write" filing, a matter was not created from which the Division could request a hearing. Essentially Allstate asserts that because Section 19–107 is a file and use statute, it was entitled to implement its "non-

write" within 60 days, and the Insurance Commissioner's "position" was meaningless, unless it was one of disapproval.

We disagree with Allstate. While it is true that statutorily the Commissioner is not mandated to take a "position" on a filing, it is also clear that the "position" taken regarding Allstate's filing is not a nullity. Insurance companies in similar situations have used a "position" of an insurance commissioner to defend against a policy provision's illegality. *See Watson v. United Services Automobile Ass'n,* 566 N.W.2d 683, 692 (Minn.1997) ("USAA additionally argues that its insurance policy must be valid because the Commissioner of Commerce approved it.... [A] provision in an insurance policy contrary to the Minnesota standard fire insurance policy cannot be permitted to stand even if the commissioner approved it. The commissioner is an administrative official with no power to alter the meaning and intention of the language of the legislature."). It is also obvious that were Allstate's decision not to write insurance in certain geographic areas challenged as discriminatory in federal court in the wake of *Dehoyos v. Allstate Corp.,* 345 F.3d 290 (5th Cir.2003), Allstate may choose to use the "position" of the Insurance Commissioner as a defense. *See* William Goddard, *Swimming in the Wake of Dehoyos: When Federal Courts Sail into Disparate Impact Waters, Will State Regulation of Insurance Remain Above the Waves?,* 10 Conn. Ins. L.J. 369, 395 (2003). Thus, the issuance of the e-mail on May 31, 2007, in which the Insurance Administration determined the proposed "nonwrite" to be nondiscriminatory, among other things, did create a pending matter that affected insurance consumers and over which the Commissioner had original jurisdiction, giving the Division the ability to "appear before the Commissioner ... on behalf of insurance consumers...." *See* Section 6–306(a)(2) of the State Government Article.

Allstate also argues that the creation of the Division in the Office of the Attorney General is conducive of the legislative intent that the Division should not have standing as a party before the Commission because the Attorney General's Office

would be representing both the Division and the Insurance Commissioner in any judicial review action. In support of this contention, Allstate cites two cases from other jurisdictions, *Att'y Gen. v. Michigan Pub. Serv. Comm'n,* 243 Mich.App. 487, 625 N.W.2d 16, 33 (2000) and *City of York v. Penn. Pub. Util. Comm'n,* 449 Pa. 136, 295 A.2d 825, 831–33 (1972); both are instances in which a state agency named the respective state's attorney general's office as an adverse party. These cases are inapposite, however, because the Office of the Attorney General is not, in the present case, an adverse party.

We would note as well, Allstate has conceded in its brief, "that when the Attorney General appears in representative capacity, he or she may represent opposing state agencies in the same action." Our sister states, in the same situation, have emphasized the importance of the assurance of independent representation, when competing parties represented by the Attorney General are involved: "A majority of states have permitted ... the AG to concurrently represent conflicting interests when the AG can ensure independent representation for the competing parties." *State v. Klattenhoff,* 71 Haw. 598, 801 P.2d 548, 551 (1990), citing *Superintendent of Ins. v. Attorney Gen.,* 558 A.2d 1197, 1202–03 (Me.1989); *Connecticut Comm'n on Special Revenue v. Connecticut Freedom of Information Comm'n,* 174 Conn. 308, 387 A.2d 533, 537 (1978); *Feeney v. Commonwealth,* 373 Mass. 359, 366 N.E.2d 1262, 1266 (1977); *E.P.A. v. Pollution Control Bd.,* 69 Ill.2d 394, 14 Ill.Dec. 245, 372 N.E.2d 50 (1977); *Commonwealth ex rel. Hancock v. Paxton,* 516 S.W.2d 865 (Ky.1974); *Humphrey ex rel. State v. McLaren,* 402 N.W.2d 535 (Minn.1987); *State ex rel. Allain v. Mississippi Pub. Serv. Comm'n,* 418 So.2d 779 (Miss.1982); *State ex rel. McLeod v. Snipes,* 266 S.C. 415, 223 S.E.2d 853, 855–56 (1976). We are assured that the Division's representation by the Attorney General and the Commissioner's representation by the Attorney General does not create a conflict, especially when one is functioning as general counsel to a State agency and the other is not.

In conclusion, then, we hold that the Division was a party to a matter pending before the Commissioner, when it requested

a hearing on Allstate's non-write, and that it has standing to seek judicial review.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEES.**