You have requested our opinion concerning appointments to the Citizens' Advisory Council for the Baltimore Corridor Transit Study — Red Line ("Advisory Council"). In particular, you inquired whether alternate members may be designated by an appointing authority to serve on the Advisory Council.
For the reasons explained below, we conclude that the legislation establishing the Advisory Council does not authorize the officials charged with appointing the Council's membership to name alternate members. Nor may the members themselves delegate their role on the Advisory Council to someone else.
 I Statutory Background
The Advisory Council was established by the General Assembly in 2006 to advise the Maryland Transit Administrator on major policy issues concerning the Baltimore Corridor Transit Study, which is being conducted with respect to a proposed ten-mile transit line in the Baltimore metropolitan area. The Advisory Council is charged with providing advice on, among other things, construction alternatives, compensation of property owners, redevelopment of commercial areas around the transit corridor, and hiring preferences *Page 120 
for residents of the region for construction of the project. Chapter 2, § 2 and Chapter 3, § 2, Laws of Maryland 2006 (Special Session).[1]
The Advisory Council consists of 15 members who are appointed as follows: five by the President of the State Senate, five by the Speaker of the House of Delegates, two by the Governor or, at the Governor's discretion, the Maryland Transit Administrator, two by the Mayor of Baltimore City (one representing the Baltimore City Department of Transportation and the other representing the Baltimore City Department of Planning), and one by the County Executive of Baltimore County.Id.[2] *Page 121 
The Advisory Council continues in existence until passenger service begins on the initial phase of the Red Line or until project funding is otherwise expended. Id.[3] Should a member resign (and presumably if a vacancy otherwise occurs), a new member is to be appointed by the official who appointed the member whose seat is vacant. Id.
 II Appointments to the Advisory Council
Accurate determination of the membership of the Advisory Council is obviously important in terms of the Council's operation and governance. For example, it is necessary to know with specificity the members of the Council to determine whether a quorum is present. Whether a quorum is present has various implications, such as the applicability of the Open Meetings Act, *Page 122 
Annotated Code of Maryland, State Government Article ("SG"), § 10-501et seq.[4] Certainty in the identification of committee members is also necessary to determine the number required for a majority vote in order for the body to take any action. See 73 Opinions of the AttorneyGeneral 6, 7 (1998) (addressing common law quorum requirement and number necessary for a public body to act).
Your inquiry involves a question of statutory interpretation. The primary goal in interpreting a statute is discerning the legislative purpose. People's Ins. Counsel Div. v. Allstate Ins. Co., 408 Md. 336,351, 969 A.2d 971 (2009). Analysis begins with the statutory language itself. And if the language of the statute is clear and unambiguous, the analysis ordinarily ends, as there is no need to look beyond the statutory provisions. Id.
Here the appointment provision is clear. Each appointing authority is entitled to name a specific number of members to the Advisory Council. The statute does not authorize the appointment of alternates. The Mayor of Baltimore is entitled to appoint two members — one from the City's Department of Transportation and one from the City's Department of Planning. The statute does not authorize the Mayor or any other appointing authority to name alternate members. Had the General Assembly intended that alternate members be appointed, it would have authorized such appointments in the statute. Cf. Annotated Code of Maryland, Election Law Article, § 2-201; 84 Opinions of the Attorney General 99 (1999) (addressing role of substitute members of local election boards).
A closely related issue is whether an individual who has been appointed to serve on the Advisory Council may delegate that role to another individual. The legal authority to delegate a responsibility often depends on the nature of that responsibility. There is a continuum from ministerial duties that can be delegated absent contrary language in the enabling statute, to discretionary functions that might be delegated subject to preliminary instruction and subsequent review, to duties specifically conferred by law which *Page 123 
may be delegated only if explicitly authorized by law. See 61 Opinions ofthe Attorney General 734 (1976); 88 Opinions of the Attorney General 25 (2003).
There are numerous examples throughout the Maryland Code where the General Assembly has expressly authorized that a position on a public body may be further delegated, although this authority is most often found where the designated member serves in an ex officio capacity. See,e.g., Annotated Code of Maryland, Agriculture Article, § 10-1101
(membership of the Seafood Marketing Advisory Commission); Annotated Code of Maryland, Transportation Article, § 8-310 (membership of State Highway Access Valuation Board). In our view, the absence of express authorization means that a member may not delegate his or her appointment. In construing the provisions governing an appointment process, strict compliance with the statute is required. Goodman v. Clerkof the Circuit Court for Prince George's County, 291 Md. 325, 329,435 A.2d 422 (1981); see also 2 Am. Jur. 2d Administrative Law 35 (members of administrative agency must be appointed in accordance with applicable statute).
Thus, without authorization in the enabling statute or other law, a member appointed to an advisory council may not delegate the position to another individual. Here the General Assembly charged specific officials with naming members they felt appropriate to serve on the Advisory Council. The statute does not authorize those appointed to delegate their statutory responsibilities as members of the Advisory Council.[5] *Page 124 
 III Conclusion
In summary, the legislation establishing the Advisory Council does not authorize the officials charged with appointing the membership to name alternate members. Nor may the members themselves delegate their role on the Advisory Council.
In reaching this conclusion, we recognize that an individual appointed to the Advisory Council may not be able to attend every meeting and that another individual could effectively represent the same interests and contribute to the deliberations. You, as the presiding chairs, or the body itself, could give an individual attending on behalf of a member a "seat at the table" and allow that individual to participate in discussions or informal polling of the Advisory Council.[6] However, only the actual members appointed to the Advisory Council should be counted for determining the presence of a quorum or for any formal vote by the body.
Douglas F. Gansler Attorney General
William R. Varga Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions and Advice
[1] The legislation establishing the Advisory Council was initially passed during the regular 2006 legislative session, but it was vetoed by Governor Ehrlich. The Governor viewed the legislation as unnecessary in light of Executive Order 01.01.2006.04, which created a Community Advisory Council appointed by the Governor. See veto messages on Senate Bill 873, 5 Laws of Maryland 2006 p. 3397, and House Bill 1309, 5 Laws of Maryland 2006 p. 3830. The Legislature overrode the vetoes during a special session held June 2006.
[2] The statute reads:
 The Advisory Council consists of the following members:
 (1) 5 members who are business owners, residents, service providers, or workers in the Red Line transit corridor, and who are appointed by the President of the Senate:
 (i) based on geographic consideration; and
 (ii) after consultation with the members of the Baltimore City Delegation of the General Assembly who represent legislative districts 41, 44 and 46 and the members of the Baltimore County Delegation to the General Assembly who represent legislative district 10;
 (2) 5 members who are business owners, residents, service providers, or workers in the Red Line transit corridor, and who are appointed by the Speaker of the House:
 (i) based on geographic consideration; and
 (ii) after consultation with the members of the Baltimore City Delegation of the General Assembly who represent legislative districts 41, 44, and 46 and the members of the Baltimore County Delegation to the General Assembly who represent legislative district 10;
 (3) 2 members who are appointed by the Governor or, at the Governor's discretion, the Maryland Transit Administrator;
 (4) 2 members who are appointed by the Mayor of the City of Baltimore to represent the Baltimore City Department of Transportation and the Baltimore City Department of Planning; and
 (5) 1 member who is appointed by the County Executive of Baltimore County.
Chapter 2, § 2(b), Laws of Maryland 2006 (Special Session). Chapter 3 is substantively identical.
[3] The Advisory Council issued its initial report on September 9, 2008. It is available online at http://www.baltimoreredline.com/images/
stories/redline_documents/reports/CAC_Annual_Report_2008.pdf.
[4] Application of the Act is determined, in part, by whether a "meeting" occurs. The term "meet" is defined for purposes of the Act as "to convene a quorum of a public body for the consideration or transaction of public business." SG § 10-502(g) (emphasis added).
[5] Although a position on the Advisory Council would not be deemed an office, the discussion found in a classic treatise on public offices is persuasive:
 In those cases in which the proper execution of the office requires, on the part of the officer, the exercise of judgment or discretion, the presumption is that he was chosen because he was deemed fit and competent to exercise that judgment and discretion, and, unless power to substitute another in his place has been given to him, he cannot delegate his duties to another.
Mechem, A Treatise on the Law of Public Offices and Officers § 567 (1890).
[6] While such informal participation by non-members may be lawful and useful for an advisory body, it may not be appropriate for a body performing a quasi-judicial function. *Page 125